**Linda MILLER, Appellant,**

v.

**NATIONAL CASUALTY COMPANY,
Appellee.**

**Equal Employment Opportunity
Commission, Amicus
Curiae.**

**No. 95–1001.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1995.

Decided July 31, 1995.

D. Eric Sowers, St. Louis, MO, argued (Dayna F. Deck, on the brief), for appellant.

Charles Edwin Reis, St. Louis, MO, argued (Mary Byrne MacDonald, on the brief), for appellee.

BOWMAN, Circuit Judge.

Linda Miller appeals the order of the District Court [1] granting summary judgment in favor of National Casualty Company in this action for damages and for injunctive, declaratory, and equitable relief brought under the Americans with Disabilities Act, 42 U.S.C. § 12101–12213 (Supp. V 1993) (ADA), and the Missouri Human Rights Act, Mo.Rev. Stat. § 213.010–213.137 (1994) (MHRA). For the reasons set forth below, we affirm.

## I.

We review a district court's grant of summary judgment *de novo, Maitland v. University of Minn.*, 43 F.3d 357, 360 (8th Cir.1994), using the same standard applied by the District Court, *Abbott v. City of Crocker, Mo.*, 30 F.3d 994, 997 (8th Cir.1994). Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *quoted in Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences without assessing credibility. *Abbott*, 30 F.3d at 997.

The record, so viewed, shows the following. Except for a brief hiatus of about three months in 1985, Miller worked as a benefits analyst for National Casualty (and its predecessor in interest, Hickey–Mitchell) from March 14, 1983 until the termination of her employment on November 3, 1992. On separate sets of employment applications/employee questionnaires filed with National Casualty, one completed in March 1983 and a second in June 1985, Miller indicated that she did not suffer from any physical or medical condition which would limit her capacity to perform the job for which she applied. She listed impaired vision as her only disability. Miller now concedes that those representations were false because they did not disclose the fact that she had received treatment for manic depression beginning in 1982. These treatments continued until 1986. Nothing in the record suggests that during the term of her employment with National Casualty, Miller told anyone at the company that she suffered from a mental impairment, or that

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

she needed special accommodation in order to perform her job.

On October 12, 1992, Miller met with Ted Michael, National Casualty's Vice President of Insurance Operations, and asked for a few days off to deal with stress generated by family problems. Miller told Michael that she "could not take the stress of [her] job and [the family problems] both at the same time." July 14, 1994 Deposition of Linda Miller, Joint Appendix Vol. I at 153–54. Michael gave Miller two days off—Monday and Tuesday, October 12 and 13—and advised her to get in touch with him on Wednesday to let him know how things were going. Although Miller believes she called her supervisor, Nancy Poblenz, on Wednesday, October 14, she cannot remember what she and Poblenz discussed. Miller did not report to work on October 15, but she did go into National Casualty's offices on Friday, October 16, to ask her immediate supervisors, Devon Holly and Maria Kontras, for more time off. Holly and Kontras told Miller that unless she obtained documentation of her illness from a doctor, she was expected to be back at work on Monday, October 19.

Later on October 16, Miller obtained a medical excuse from Kathy Siebert, a nurse practitioner with Miller's health care provider, releasing her from work for the period from October 12, 1992 through October 23, 1992, and diagnosing Miller's illness as "situational stress reaction." Defendant's Exhibit I, J.A. Vol. II at 229. The medical excuse, which Miller mailed to National Casualty on Monday, October 19, was the only documentation of a medical problem that Miller provided to National Casualty. Although Miller spoke with Kontras on Thursday, October 22, she did not discuss the nature of her medical problems nor mention her history of manic depression.

Despite receiving a letter from National Casualty informing her that she was expected to return to work on Monday, October 26, following the expiration of the work-release period, Miller did not do so. Sometime during the week of October 26, 1992, Melissa Drake, Miller's sister, spoke to Audrey Ostendorf, Kontras's secretary, and told her that "Linda [Miller] was mentally falling apart and the family was trying to get her into the hospital." Drake Affidavit, J.A. Vol. I at 102–03. On Thursday, October 29, Drake visited National Casualty's offices where, in response to Kontras's inquiries about Miller, Drake stated, "She's falling apart. She's really lost it. We're trying to get her into the hospital." *Id.* Meanwhile, on Wednesday, October 28, National Casualty sent Miller a final letter, which Miller received the following day, advising her that she faced termination of her employment if she failed either to provide a medical excuse by Friday, October 30, or to return to work without the excuse on Monday, November 2. Miller did neither, there was no further communication from her or anyone purporting to speak for her, and National Casualty terminated her employment on Tuesday, November 3, 1992.

## II.

The ADA requires an employer to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability. *See* 42 U.S.C. § 12112 (Supp. V 1993); 29 C.F.R. § 1630.9 (1994). The gravamen of Miller's complaint is that National Casualty failed to make a reasonable accommodation for her mental impairment. Specifically, Miller argues that when she failed to report to work because of her mental impairment, National could have responded by allowing her additional time to obtain a medical excuse, rather than terminating her employment with the company. National Casualty, on the other hand, argues that it was not aware that Miller had a mental impairment and therefore it was not required by the ADA to make an accommodation.

Before an employer must make accommodation for the physical or mental limitation of an employee, the employer must have knowledge that such a limitation exists. The Interpretative Guidance on Title I of the ADA states that "an employer [is not] expected to accommodate disabilities of which it is unaware." 29 C.F.R. app. § 1630.9 (1994). The logic of this proposition is overwhelming and has been affirmed repeatedly by other courts construing both the ADA and the

Rehabilitation Act of 1973. *See, e.g., Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931–34 (7th Cir.1995); *Landefeld v. Marion General Hospital, Inc.*, 994 F.2d 1178, 1181–82 (6th Cir.1993); *McIntyre v. Kroger Co.*, 863 F.Supp. 355, 358–59 (N.D.Tex.1994); *Mazzarella v. United States Postal Serv.*, 849 F.Supp. 89, 96–97 (D.Mass.1994). In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. app. § 1630.9.

■ Having reviewed the record in the present case, we conclude that the evidence all points one way: Miller did not apprise National Casualty of the fact that she suffered from a mental impairment. On the employment applications and employee questionnaires she submitted to the company, Miller disavowed that she suffered from any condition which would limit her capacity to perform her job, and failed to disclose her treatment for manic depression. Indeed, in her deposition, Miller conceded that the first indication she gave to National Casualty that she was manic depressive was in a letter she sent to the company on November 11, 1992, more than a week after her employment had been terminated. Nor could it reasonably be found, given all the circumstances of the case, that Miller's sister's statements that Miller was "falling apart" should have alerted the company to the fact that Miller suffered from a mental disability that the ADA would require the company to accommodate.

To the extent Miller's symptoms were known to National Casualty prior to its termination of her employment, they were not "so obviously manifestations of an underlying disability that it would be reasonable to infer that [her] employer actually knew of the disability." *Hedberg*, 47 F.3d at 934. *See also id.* at 932 (noting that attendant symptoms can make some disabilities more evident than others). The record does not indicate that Miller had ever exhibited symptoms of manic depression or any other mental impairment during her time on the job with National Casualty. Thus, from National Casualty's perspective, it was faced only with a case of absenteeism unexcused by medical documentation. As the Seventh Circuit not-

ed in *Hedberg*, "The ADA does not require clairvoyance." *Id.* at 934. National Casualty was not obligated to divine the presence of a disability from Miller's extended absence from work and the company's knowledge that she was in some sort of stressful family situation.

Finally, we note that the Interpretative Guidance to the ADA states that "[w]hen the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." 29 C.F.R. app. § 1630.9. As indicated above, we are satisfied that the record in this case would not support a finding that Miller's disability was obvious to her employer, and thus that the company was entitled to documentation of her need for accommodation. Other than a single medical excuse from a nurse practitioner diagnosing her illness as "situational stress reaction," and releasing Miller from work until October 23, Miller provided National Casualty with no documentation concerning her illness, despite the company's repeated requests, until more than a week after the company terminated her employment.

In sum, we agree with the District Court that since National Casualty did not know of Miller's disability until after her employment was terminated, it would have been impossible for the company to have made that disability the basis for the termination. Thus, National Casualty was entitled to judgment as a matter of law on Miller's ADA claim. For the same reason, Miller's MHRA claim that she was discharged because of her disability must also fail.

### III.

The judgment of the District Court is affirmed.