**Vicky JOHNSON, Plaintiff,**

v.

**BOARDMAN PETROLEUM, INC., and Smile Gas, Inc., Defendants.**

**Civil Action No. CV 195–66.**

United States District Court,
S.D. Georgia,
Augusta Division.

March 20, 1996.

---

Charles Leslie Wilkinson, III, Augusta, GA, for Plaintiff.

Robert Perry Sentell, III, Kilpatrick & Cody, Augusta, GA, for Defendants.

## ORDER

BOWEN, District Judge.

Before the Court is Defendants' Motion for Summary Judgment in this case involving the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. Upon consideration of the parties' briefs, the Motion for Summary Judgment is **GRANTED** for the reasons stated below.

## I. FACTUAL BACKGROUND

Defendants Boardman Petroleum, Inc. and Smile Gas, Inc. (collectively referred to as "Boardman" herein) own numerous combined gas stations and convenience stores throughout the southeastern United States. In December of 1991, Boardman promoted Plaintiff Vicky Johnson to a District Supervisor. As District Supervisor, Johnson was charged with the responsibility of supervising eight

Boardman stores. Johnson had been promoted to this position from a store cashier within three years. Johnson understood as a cashier, store manager, and District Supervisor that repeated or excessive cash shortages within a store were considered serious violations of company policy. Johnson also understood that controlling cash shortages was an important aspect of her position as District Supervisor.

On January 28, 1993, Mr. Henry Colley, Johnson's direct supervisor, evaluated her job performance as a District Supervisor. Following a written appraisal outlining Johnson's deficiencies, Colley counseled Johnson and reviewed certain suggestions to enhance her performance. Specifically, Colley pointed out that Johnson did not exercise good judgment when it came to decisions involving her subordinates. Indeed, Johnson made notations following her conference with Colley that she needed "improvement in attitude, first, and people skills, second. I need to work for the company, not just my employees."

Colley testified in his deposition that after a short-lived improvement, numerous problems involving Johnson's failure to properly supervise her subordinates resurfaced. During the last quarter of 1993, three of her eight stores suffered cash shortages of differing proportion. One store in particular, Store No. 58, experienced cash shortages of $1,278 in October, $2,900 in November, and $10,000 in December.[1]

Following the report of cash shortages in November, Colley urged Johnson to terminate the store manager at Store No. 58. However, the shortages did not cease after Johnson did so. On December 10, 1993, Colley brought the shortages to Johnson's attention again. Johnson assured Colley that the problem would be corrected. On December 20, 1993, Colley learned Store No. 58 was still experiencing problems, and he notified Johnson again. In January of 1994, Colley learned of the $10,000 total cash shortage for the month of December. Colley claims he made the decision at this time to terminate Johnson.

---

1. A normal cash shortage for a busy store is between $400 and $500 a month.

At the time Colley decided to terminate Johnson, she was already on a leave of absence due to her husband's death on December 30, 1993. Apparently, Colley had suggested that Johnson take the time off and seek help in dealing with her grief.[2] Johnson began seeing a psychiatrist on January 19, 1994. Although the psychiatrist noted Johnson was depressed when he first saw her, he never diagnosed her with "major depression." Also, Johnson never submitted any medical excuse or documentation that she was suffering from a mental impairment and was unable to work because of such impairment.

When Johnson sought to return to work, Colley asked for verification that she was able to do so. On February 18, 1994, the psychiatrist indicated Johnson could return to work if she wanted to. In fact, the psychiatrist had never advised that Johnson was unable to work. After Colley received the doctor's release to return to work, he notified Johnson of her termination. Johnson claims Colley told her she was unable to perform the job, either mentally or physically. Colley denies this claim and states he fired Johnson because of her failure to investigate and remedy the cash shortages.

Johnson filed this suit, alleging that her employment termination violated the Americans with Disabilities Act ("ADA") because Boardman "perceived" she had a disability. In Johnson's Amended Complaint, she alleges that her termination also violated the Family Medical Leave Act ("FMLA") because she had a "perceived serious health condition" which entitled her to leave, and Boardman's refusal to reinstate her after that leave violated the FMLA. Boardman seeks summary judgment on both claims.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

When the *non-moving* party has the burden of proof at trial, as in this case, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the

---

**2.** Plaintiff claims Colley told her to "seek professional help" but Colley claims he only told her to take the time she needed and "get whatever help she needed" to deal with the death of her husband. The debate over semantics is irrelevant to this case, however.

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

## III. THE AMERICANS WITH DISABILITIES ACT CLAIM

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees...." 42 U.S.C. § 12112(a). A plaintiff may present either direct or circumstantial evidence to prove intentional discrimination. In cases in which a plaintiff relies upon circumstantial evidence,[3] the United States Supreme Court has articulated a burden-shifting framework within which Title VII discrimination cases may be analyzed. *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1980). Other federal circuits have applied this framework to ADA claims. *E.g., Price v. S–B Power Tool,* 75 F.3d 362 (8th Cir. 1996); *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394 (5th Cir.1995); *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793 (7th Cir.1995); *Ennis v. National Ass'n of Business & Educ. Radio, Inc.,* 53 F.3d 55 (4th Cir.1995); *see*

*Lewis v. Zilog, Inc.,* 908 F.Supp. 931 (N.D.Ga.1995).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. The burden of production then shifts to the employer to offer legitimate, non-discriminatory reasons for the plaintiff's termination. Once these reasons are presented, the burden shifts back to the plaintiff to show that the reasons proffered were mere pretext. *See generally Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Plaintiff at all times carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by the presence of a disability. *See id.* 450 U.S. at 253, 101 S.Ct. at 1093.

In its motion for summary judgment, Boardman argues Johnson cannot demonstrate a prima facie case of discrimination under the ADA. Further, Boardman contends that they are entitled to summary judgment because Johnson has presented no evidence to rebut their legitimate, non-discriminatory reasons for her termination.

To establish a prima facie case of discrimination in violation of the ADA, a plaintiff must prove the following: (1) that she is a qualified individual with a disability; (2) that she has suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the disability. *Smith v. Upson County,* 859 F.Supp. 1504, 1514 (M.D.Ga. 1994), *aff'd,* 56 F.3d 1392 (11th Cir.1995) (table disposition). Defendants argue that Johnson cannot show she had a disability recognized under the ADA nor can she show a causal connection between her termination and her disability.

The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits

---

3. The evidence Johnson claims supports her discrimination claim is only circumstantial. Direct evidence of discrimination is evidence which, if believed, would prove discriminatory intent without inference or presumption. *Earley v. Champion Internat'l Corp,* 907 F.2d 1077, 1081 (11th

Cir.1990). Direct evidence consists of "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [the disability]...." *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989). Johnson has produced no such evidence.

one or more of the major life activities [4] of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Johnson admits in her deposition that she was not suffering from an actual disability or that she was unable to perform any of her employment duties. Instead, Johnson contends Boardman "regarded" her as having a mental impairment, namely depression, for which she was terminated from employment. In order for Johnson to prove she had a disability under this third definition, she must show Boardman perceived that not only did she suffer from a mental impairment, but that such impairment substantially limited her ability to work. *See Hamm v. Runyon*, 51 F.3d 721 (7th Cir.1995) (interpreting the term "disability" under the Rehabilitation Act, which uses the same definition).

■ In this case, Johnson alleges Boardman perceived her with a disability which limited her ability to work based on three incidents or comments. First, she alleges Colley told her to seek professional help when he gave her time off. Second, Colley required a release from her doctor before she could return to work. Third, Johnson claims Colley told her he thought she was physically and mentally incapable of continuing as District Supervisor when he terminated her.

■ Colley's suggestion that Johnson take time off and seek help is a facially neutral statement which shows Colley perceived Johnson needed time to deal with the death of her husband. He also showed concern with her emotional state when he waited to get a release from her doctor before he terminated her. This concern for Johnson's emotional well-being does not demonstrate that Colley believed she was disabled in the sense that she could not perform her job; Colley never suggested to anyone at Boardman that he thought Johnson suffered from a

debilitating depression. Indeed, Johnson never told anyone at Boardman that she was suffering from a disability or that she was unable to perform her job. Johnson admitted that she never suffered from such a disability. She did not list depression as a physical condition which may affect her work on her application with Boardman or on any subsequent application for employment. Finally, Johnson never presented to anyone at Boardman a doctor's excuse indicating she had a disability. Thus, Johnson has presented no direct evidence from which Colley could have perceived that she had a limiting disability. Moreover, Colley's knowledge that Johnson was under stress or suffered from grief does not rise to the level of demonstrating Colley thought she had a mental disability or that she was unable to work because of this disability. Grief does not constitute a disability under the ADA because it does not necessarily render the employee unable to perform major life functions. *See Miller v. National Casualty Co.*, 61 F.3d 627 (8th Cir.1995) (stressful family situations do not constitute a disability under the ADA).[5]

Essentially, Boardman's grant of a leave of absence and suggestion to seek help if required was a humanitarian gesture in response to Johnson's understandable grief. Even after Colley decided Johnson's job performance warranted her dismissal, he waited for Johnson to be released to work before he terminated her. The only reasonable inference to be drawn from this fact is that Colley was concerned with her emotional well-being. To show her gratitude for Boardman's sympathetic and indulgent stance, Johnson sued the company. Such a response represents an employee's misguided decision to punish Boardman and cover up her own obvious inadequacies with her job performance. This suit flies in the face of the policy concerns underlying the ADA because it encourages

---

4. Major life activities include "working." 29 C.F.R. § 1630.2(i).

5. The evidence presented by the plaintiff in *Miller* in opposition to the employer's motion for summary judgment was much more extensive than the evidence relied upon by Johnson. In *Miller*, the plaintiff's sister told her employer that

the plaintiff was "mentally falling apart and that the family was trying to get her into the hospital." 61 F.3d at 630. The Eighth Circuit held that there was insufficient evidence to place the employer on notice of plaintiff's disability, especially where plaintiff did not notify the employer herself. *Id.*

employers to dehumanize their relationships with their employees for fear that showing concern for and recognizing their employees' emotional problems would land them in court facing a discrimination claim based upon a perceived mental disability.

Plaintiff also relies upon an alleged statement made by Colley upon her termination; she claims Colley told her she was "not mentally or physically able to handle the pressures of her job anymore as a district supervisor." Colley denies this allegation. However, even if he made the statement, it does not provide sufficient evidence, standing alone, from which a jury could reasonably determine that Colley believed she had a mental disability which substantially impaired her ability to work. Based upon the facts as presented in this case, no reasonable person could expect Boardman to have divined that Johnson had a disability as defined by the ADA.

 Furthermore, Johnson has not established the requisite causal connection between the perceived mental disability and her termination. In Title VII employment discrimination cases, an essential element of a prima facie case of discrimination is proving discriminatory animus. *See Giles v. Ireland,* 742 F.2d 1366, 1374 (11th Cir.1984) ("Proof of discriminatory intent is an essential element of [a] prima facie case under a disparate treatment theory...."); *Pace v. Southern Ry. System,* 701 F.2d 1383, 1390 (11th Cir.) ("A prima facie case may be established only when there is a basis for inferring that discrimination is the reason for the employment decision...."), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Similarly, to establish a prima facie case of discrimination under the ADA, a plaintiff must show that the decision to terminate her was causally connected to or motivated by the employer's discrimination against a disability. In this case, even if Colley perceived a disability in Johnson, she has provided no evidence, aside from unsupported allegations, that her termination was motivated by Colley's discriminatory animus towards this disability.

In conclusion, Johnson has not provided sufficient evidence to create a genuine issue of fact with regard to Colley's perception of Johnson as having a mental disability. Johnson has also failed to establish a genuine issue of fact with regard to a causal connection between her alleged disability and her termination. Therefore, Johnson cannot establish a prima facie case of discrimination in violation of the ADA based upon the circumstantial evidence outlined above.

 Even assuming Johnson could establish a prima facie case of discrimination, Boardman has offered a legitimate, non-discriminatory reason for her termination, that is, proof of Johnson's failure to investigate and remedy the cash shortages in three of the eight stores which she supervised. Thus, the burden falls upon Johnson to present evidence from which a jury could infer that this proffered reason was merely pretext. Johnson has utterly failed to present such evidence. Because Johnson ultimately bears the burden of establishing pretext, her failure to present significantly probative evidence of such compels summary judgment.

## IV. THE FAMILY MEDICAL LEAVE ACT CLAIM

Boardman briefed the following reasons supporting its motion for summary judgment on the FMLA claim: (1) Johnson has failed to establish that she has a condition qualifying for coverage under the FMLA, and (2) Johnson has failed to present any evidence that her employment was terminated as a result of her leave of absence. Johnson failed to respond or dispute either of Boardman's assertions. Therefore, the FMLA claim is deemed to have been abandoned by Johnson. Accordingly, the Court will not address the substantive issues presented by Boardman on this claim.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment with respect to both claims contained in Plaintiff's Complaint is hereby **GRANTED.** The clerk is instructed to **ENTER FINAL JUDGMENT**

in favor of Defendants and **CLOSE** this case. Costs are taxed against Plaintiff.

**ORDER ENTERED.**