**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

–

_____

No. 97-2547

_____

| | |
|---|---|
| Carol J. Cody, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * Appeal from the United States District |
| v. | * Court for the Eastern District of |
| | * Missouri. |
| CIGNA Healthcare of St. Louis, Inc., | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: January 12, 1998
Filed: March 16, 1998

_____

Before LOKEN and MURPHY, Circuit Judges, and ALSOP,[1] District Judge.

_____

MURPHY, Circuit Judge.

Carol Cody sued CIGNA Healthcare of St. Louis (Cigna) under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. §§ 213.010 et seq., claiming that Cigna harassed and ultimately terminated her because she suffered from depression. The district court[2]

---

[1]The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

granted Cigna's motion for summary judgment on the grounds that Cody had not made a showing that she was disabled within the meaning of the statutes.[3] Cody appeals from the judgment, and we affirm.

Viewed in a light most favorable to Cody, the facts pertinent to summary judgment are as follows. Cody worked as a nurse for Cigna between August 26, 1992 and October 27, 1993, and was assigned to the Ambulatory Medical Records Review Project in August 1993. The records project required her to make on site quality of care reviews at physicians' offices in the metropolitan St. Louis area. Cody claims that she suffers from depression and anxiety and that it was therefore difficult for her to go into certain parts of the city she considered dangerous. Although she occasionally mentioned to her supervisors that she suffered from depression and was seeking psychological help, she never gave them reports from doctors about her condition or about any necessary restrictions for her work. Cody also did not specify any occasion in which her depression actually impaired her ability to work.

Cody believed that she was intentionally being assigned to travel exclusively to the areas that exacerbated her anxiety. She spoke to her supervisor, Susan Meiners, about the situation in June or August of 1993 and requested a change in assigned areas, and mentioned her continuing anxiety and visits to a psychotherapist. She claims Meiners "brushed her off." Cody also submitted a proposal to increase cost effectiveness to Eric Schultz, the executive director of Cigna's St. Louis office, which included concerns about dangerous neighborhoods. Cody claims that Meiners reacted unfavorably to her contact with Schultz.

---

[3]The definition of disability is the same in all material respects under the ADA and MHRA. See 42 U.S.C. § 12102(2); Mo. Rev. Stat. § 213.010(10); see also Kramer v. K & S Associates, 942 F. Supp. 444, 446 (E.D. Mo. 1996).

On October 25, Cody went to see Schultz to talk about her concerns and informed him that she was seeing a psychologist. Schultz scheduled a meeting with Cody and Meiners for the next day and asked Cody if she felt she could work for a supervisor other than Meiners. Cody responded that she could. Cody states the next day Meiners confronted her about contacting Schultz and threatened that "she would suffer the consequences." That same day Cody found a styrofoam cup on her desk with a sign that read "alms for the sick." She told Schultz about her encounter with Meiners and about the cup, and he suggested that she take the rest of the day off because she was upset and crying. He rescheduled the meeting with Cody and Meiners for October 27.

Later on the evening of October 26, a coworker called Schultz to report occasions where Cody had been behaving strangely and had spoken about carrying a gun. She expressed fear that Cody might be violent. At a meeting the next morning other employees told Schultz that they had observed Cody sprinkling salt in front of her cubicle "to keep away evil spirits,"[4] staring off into space for an hour at a time, drawing pictures of sperm, and talking about a gun.

Schultz called the human resources department to report what he had learned, and during his conversation Cody arrived for the meeting with a noticeable bulge in her purse. He described her appearance over the phone, and the human resources office contacted Cigna's security department. A "local security specialist" was sent to the meeting, and human resources instructed Schultz to offer Cody a paid leave of absence with her return contingent upon undergoing a psychiatric evaluation. The specialist

---

[4]Cody states that she and her coworkers had all engaged in salt sprinkling several weeks earlier as a joke. It appears that other unusual behavior in Cigna's St. Louis office was not unique to Cody, as evidenced by the fact that Meiners made "voodoo" dolls as gifts to her coworkers. Cody Affidavit, March 29, 1994, submitted to the EEOC.

attended the meeting (Cody was told he was a mediator), and he and Schultz decided to deactivate Cody's security access card.

As the meeting began, the purses of Cody and Meiners were examined and no weapons were found. Meiners left after a brief conversation, and Schultz offered Cody a medical leave and psychiatric evaluation, but explained that she would not be transferred to a different position. Schultz originally requested that Cody attend counseling with Cigna's health care provider but agreed she could see her own therapist after she objected.

When Cody left the meeting to go home, she was unable to open either the exit door or the parking lot gate because her security card had been deactivated. The parking attendant then confiscated her card on instructions from Schultz. Cody phoned Schultz when she got home to tell him that she would not return to work at Cigna. Schultz tried to convince her to reconsider, but she claims he didn't sound sincere. When she declined, he informed her that her termination would be effective immediately and that he had "hoped it wouldn't come to this."

Cody filed discrimination charges against Cigna with the Equal Employment Opportunity Commission (EEOC) and the Missouri Human Rights Commission. The EEOC dismissed her complaint on the merits, and she brought suit in district court claiming that she was subjected to workplace harassment because of her depression and that she was constructively discharged in violation of the ADA and the MHRA. At the conclusion of discovery,[5] the defendants filed a motion for summary judgment

---

[5]During discovery Cody attempted to question witnesses about their legal representation and their preparation for depositions. The witnesses refused to answer, and the court did not compel them to respond because the questions were immaterial to the merits of the case and refusal to answer did not prevent discovery of any substantive information. Cody claims that the trial court's ruling was an abuse of discretion and argues that the questions were relevant to "the quality of the witnesses

which the district court granted on the grounds that Cody was unable to establish she was disabled within the meaning of the statutes.

We review the grant of summary judgment de novo, considering the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences without assessing credibility. Miller v. National Cas. Co., 61 F.3d 627, 628 (8th Cir. 1995). Summary judgment is only appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The ADA prohibits employment discrimination against a qualified individual because of a disability. See 42 U.S.C. § 12112(a). In all constructive discharge and harassment cases under the ADA and the MHRA, the plaintiff must first make out a prima facie case of discrimination or face dismissal of her claim. See Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir. 1996). To establish a prima facie case Cody must show that:

> she is a disabled person within the meaning of the ADA, that she is qualified to perform the essential functions of the job (either with or without reasonable accommodation), and that she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises.

Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir.), cert. denied, 117 S.Ct. 274 (1996).

---

[sic] recollections and memory." The court did not abuse its discretion because the information Cody sought would not have raised a genuine issue of material fact as to the issue of Cigna's liability. See In re Temporomandibular Joint Implants Products Liability Litigation, 113 F.3d 1484, 1491-92 (8th Cir. 1997); United States v. Birchem, 100 F.3d 607, 610 (8th Cir. 1996).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); See, Aucutt, 85 F.3d at 1319 (adopting EEOC guidelines to interpret "major life activities").

Cody maintains that her depression substantially limits her major life activities, causing a loss of sleep and appetite, and interferes with the ability "to have intimate relations." She also claims that her condition results in anxiety and distress in elevators and while driving and that it makes it difficult for her to perform her job in certain areas of St. Louis. She stated in an affidavit that her depression makes "every activity a great struggle."

Cody was always able to work and received good reviews, and she is unable to point to a single occasion when her depression impeded her work performance. She submitted no evidence of a diagnosis of depression and testified that she always ate at least one meal a day and slept between four and twelve hours a day. She testified that she experienced anxiety in elevators, driving, and entering what she perceives as high crime areas. The anxiety did not, however, make her unable to perform required tasks. This evidence did not rise to the level required to show a substantial limitation of a major life activity. See 29 C.F.R. 1630.2(j)(3)(i) (even an inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working). While Cody's statements, viewed in the light most favorable to her, demonstrate that her depression caused difficulties in her life, she did not show it was such a substantial impairment as to amount to a disability under the ADA. See Aucutt, 85 F.3d at 1319; see also 42 U.S.C. §12102(2)(A).

Cigna's psychiatric expert examined Cody over three years after she quit her job and concluded that she suffered from paranoia which interferes with her ability to interpret facts accurately and that she has a "schizotypal personality disorder." Cody claims this diagnosis creates an issue of fact about whether she was disabled, since interpretation of events is a major life function. There was no evidence that she actually misperceived reality, however, or that she suffered a condition which caused any other impairment to her life functions. Nor did her evidence show a correlation between her depression and its symptoms and a schizotypal personality disorder.

Cody also argues that she is disabled under the ADA because Cigna regarded her as having an impairment which substantially limited her major life activities. See 42 U.S.C. § 12102(2)(C). A person is regarded as having a such an impairment if others treat her as if she is disabled. See Webb v. Mercy Hospital, 102 F.3d 958, 960 (8th Cir. 1996); Aucutt, 85 F.3d at 1319 (quoting 29 C.F.R. § 1630.2(*l*)). Cody contends that Cigna viewed her as disabled. In support she cites Cigna's offering her paid medical leave and requiring that she see a psychologist before returning to work. An employer's request for a mental evaluation is not inappropriate if it is not obvious that an employee suffers from a disability. A request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired. See Miller, 61 F.3d 627, 630 (8th Cir. 1995) (quoting 29 C.F.R. App. 1630.9). Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims under §§ 12112(a) and 12102(2)(C). See Johnson v. Boardman Petroleum, 923 F. Supp. 1563, 1568 (S.D. Ga. 1996) (offer of a leave of absence showed concern for employee's well being, not treatment of the employee as disabled).

Since Schultz was aware of Cody's unusual workplace behavior and of her treatment by a psychotherapist, she says there is an inference that he considered her disabled when he offered the medical leave. Schultz's mere knowledge of behavior that could be associated with an impairment does not show that Cigna treated Cody as if

she were disabled. See Webb, 102 F.3d at 960; Stewart v. County of Brown, 86 F.3d 107, 111 (7th Cir. 1996) (rejecting perceived disability claim under Rehabilitation Act which contains the same definitions of disability as the ADA). Cf. Stradley v. Lafourche Communications, Inc., 869 F.Supp. 442, 444 (E.D. La. 1994) (issue of fact about whether defendant treated plaintiff as disabled where plaintiff terminated because of supervisor's assumption that his condition made him "potentially violent and hostile in the workplace"). While some of Cody's behavior may have been unusual, the evidence she submitted does not establish that Cody was treated as if she were disabled. See Johnson, 923 F. Supp. at 1568.

Cody also points to the security measures taken on the day of her meeting with Schultz as evidence that she was treated as disabled. The actions were taken after Schultz heard that Cody was contemplating carrying a gun and after he observed a bulge in her purse when she arrived for the meeting, and they do not show that Cigna viewed Cody as disabled. See Palmer v. City of Cook County, Ill., 117 F.3d 351, 352 (7th Cir. 1997) (summary judgment appropriate because employer's motive for firing plaintiff was a death threat against another employee, not her mental illness), cert. denied, 118 S.Ct. 893 (1998).

Since Cody did not make a prima facie showing that she was disabled, the judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.