

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| MICHAEL FELDMAN, | ) | No. ED110737 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 17SL-CC001910 |
| | ) | |
| PATRISH, L.L.C., D/B/A/ NORTHWEST | ) | Honorable William M. Corrigan, Jr. |
| AIRPORT INN, JOHN STILLWELL, | ) | |
| NARESH PATEL, AND ROBERT | ) | |
| REICHENBACH, | ) | |
| | ) | |
| Respondents. | ) | Filed: June 6, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

## OPINION

Appellant Michael Feldman appeals the summary judgment the trial court granted in favor of Respondents Patrish, L.L.C., d/b/a Northwest Airport Inn, John Stillwell, Naresh Patel, and Robert Reichenbach. In the underlying case, Feldman sued Respondents in 2017 for disability discrimination among numerous other claims arising from Respondents' termination of Feldman's employment as the security guard at Northwest Airport Inn in Bridgeton, Missouri.

Respondents moved for summary judgment on May 17, 2019. There are just two claims relevant to this appeal: Count XII, which alleged disability discrimination for failure to

accommodate in violation of the Missouri Human Rights Act (MHRA),[1] and Count XIV, which alleged disability discrimination through tangible employment action in violation of the MHRA. Respondents claimed in their motion that Feldman failed to demonstrate as a matter of disputed fact that he suffered from a "disability," an element of both claims. On January 3, 2020, the trial court entered summary judgment on both counts without making any findings or conclusions. Feldman voluntarily dismissed his remaining claims and the trial court entered its appealable judgment on June 24, 2022.

Feldman now claims that the trial court erred because there were genuine issues of material fact that (1) Feldman was disabled under the MHRA, (2) Feldman could have performed the essential functions of his security officer job with or without reasonable accommodation, and (3) Feldman's disability was a contributing factor in Northwest Airport Inn's termination of his employment.

We find that summary judgment is proper on this record because Feldman failed to demonstrate through competent admissible evidence that he had a "disability" within the meaning of the MHRA. Specifically, Feldman failed to demonstrate that before he abruptly left his employment on August 9, 2016, and checked himself into the psychiatric unit of a local hospital for a nine-day stay, (1) that he had been diagnosed with depression and anxiety, (2) that his employer knew that he suffered from those conditions before August 9, or (3) that his employer regarded him as having those conditions. Moreover, Feldman failed to show that his claimed depression and anxiety interfered with a major life activity and that he could still do the job with or without reasonable accommodation. Rather, Feldman simply claims that by notifying his employer that he had "severe depression and anxiety" on the same day he left work

---

[1] Section 213.010 *et seq.*; all statutory references are to the Revised Statutes of Missouri (2016).

2

and checked himself into the hospital to mentally restore himself before he could come back and resume work, he satisfied his burden under section 213.055 to show that he was disabled. We disagree and affirm.

## Background

In February 2014, Feldman began living at the Inn. In October 2014, in order to pay his rent, Feldman applied to work there and respondent Patel hired him in the Inn's maintenance department. Patel later hired Feldman as the Inn's sole security guard to comply with Bridgeton City Council's mandate that the Inn provide security on its premises at all times.

On August 9, 2016, Feldman and his attorney faxed a letter to the Inn informing the Inn's management that Feldman was experiencing "significant depression and anxiety" and, as a result, would be checking himself into Barnes-Jewish Hospital that same evening. The letter requested that the Inn accommodate Feldman's situation by allowing him to take a few days off to "mentally restore" himself. It stated that his seven-day-a-week work schedule prevented him from giving the Inn advanced notice and that Feldman fully anticipated being available to resume work shortly after his time in the hospital. While there is some dispute about the parties' attempts to communicate while Feldman was hospitalized, it is undisputed that no communication occurred between them from August 9 until August 16, when respondent Stillwell met with Feldman. On August 18, Respondents sent Feldman a letter stating that they considered Feldman "terminated due to job abandonment."

Over a year later, on May 26, 2017, Feldman filed his petition against the Respondents. Although Feldman's petition was in fifteen counts, the only two counts that are before us on this appeal of the trial court's June 24, 2022, summary judgment are Feldman's MHRA claims for disability discrimination — Count XII and Count XIV.

3

**Standard of Review**

We review *de novo* an appeal from the grant of summary judgment. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment appeals are considered in the light most favorable to the party against whom the judgment was entered and the non-moving party is accorded the benefit of all reasonable inferences from the record. *Id.* Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). Only evidence that is admissible at trial can be used to sustain or avoid summary judgment. *Sansone v. Governor of Missouri*, 648 S.W.3d 13, 20–21 (Mo. App. W.D. 2022).

In employment discrimination cases, summary judgment should "[s]eldom be used . . . because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant. *Id.*

**Discussion**

We address Feldman's first two points together because they both hinge on whether Feldman has a "disability," which is a threshold requirement to bring a claim under the MHRA. In Point I, Feldman argues that he established as a matter of genuinely disputed fact through admissible evidence that he has severe depression and anxiety which substantially limits one or more of his major life activities. And in Point II, Feldman argues that it is a genuinely disputed issue of material fact whether he could perform the essential functions of his job with or without

4

reasonable accommodation. We find, however, that Feldman's failure to demonstrate that he has a disability under the MHRA is fatal to his two claims.

Section 213.055 prohibits discrimination in the employment context because of a person's race, color, religion, national origin, sex, ancestry, age, or disability. *DeWalt v. Davidson Service/Air, Inc.*, 398 S.W.3d 491, 498 (Mo. App. E.D. 2013). To prove a claim of disability discrimination under the MHRA, a claimant must show that he (1) was disabled, (2) was discharged, or suffered some other adverse employment action forbidden by the statute, and (3) his disability was a factor in the adverse employment action or discharge. Section 213.055; *McKinney v. Mercy Hospital St. Louis*, 604 S.W.3d 680, 689 (Mo. App. E.D. 2020). Section 213.010(5) defines "disability" as: "[A] physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job . . . ." "Major life activities" are defined as activities which affect employability such as communication, ambulation, self-care, socialization, education, vocational training, employment, and transportation. 8 C.S.R. 60-3.060(1)(C); *Daugherty*, 231 S.W.3d at 821.

The phrase "mental impairment" means "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness and learning disabilities[.]" 8 C.S.R. 60-3.060(1)(A). Minor, temporary illnesses, such as broken bones, sprains, or colds, are not considered physical or mental impairments that result in a disability. 8 C.S.R. 603.060(1)(B)(1); *Sherry v. City of Lee's Summit*, 623 S.W.3d 647, 656 (Mo. App. W.D. 2021).

5

Again, in the context of disability discrimination, the plaintiff must prove that his condition caused *substantial impairment* to a major life activity as opposed to mere *difficulties*. *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595, 598 (8th Cir. 1998). In *Cody*, after her termination, the plaintiff brought a disability discrimination suit claiming that her employer harassed and terminated her because she suffered from depression. *Id.* at 596. The court held that Cody failed to demonstrate that her depression was a disability because she failed to show that it limited a major life activity. *Id.* at 598. In reaching that conclusion, the court noted that Cody was consistently able to work and received good reviews, that she was unable to point to a single occasion when her depression impeded her work performance, and that her anxiety did not make her unable to perform required tasks. *Id.* Thus, Cody failed to carry her burden to show that her depression caused a substantial impairment with a major life activity.

Turning to the facts of this case, we are not persuaded that Feldman has adduced adequate evidence that his claimed disability caused a substantial limitation of a major life activity. As in *Cody*, the record here demonstrates that Feldman was able to perform his job and he adduced no evidence of any previous instances where his claimed disability rendered him unable to do so. In fact, Feldman testified that he was able to work "physically, [but] not mentally." In our judgment, such testimony may support a finding that Feldman's claimed disability caused him *difficulties* but fails to satisfy his burden that it caused him *substantial impairment*. *Cody*, 139 F.3d at 598. Moreover, Feldman's notice to the Inn on the day he left work that he needed a temporary leave is more akin to a temporary illness than to a substantial impairment of a major life activity. *See Sherry*, 623 S.W.3d at 656. Point I is denied.

The second requirement to satisfy the definition of "disability" is that the employee must be able to perform the essential functions of the job, with or without reasonable accommodation.

6

Section 213.010; *Devor v. Blue Cross & Blue Shield of Kansas City*, 943 S.W.2d 662, 666 (Mo. App. W.D. 1997). This analysis is necessarily limited to whether the restricted function—the aspect of the job the employee cannot do—was essential. *Loerch v. City of Union Missouri*, 643 S.W.3d 597, 603–04 (Mo. App. E.D. 2022).

This principle is illustrated in *Rask v. Fresenius Medical Care North America*, where the plaintiff worked as a patient care technician at two kidney dialysis clinics, and after a series of disciplinary and attendance problems, was fired. 509 F.3d 466, 470 (8th Cir. 2007). Rask had a history of depression and sued her former employer, claiming that her depression was a disability and her firing constituted discrimination under the ADA[2] and the MHRA. *Id.* The court held that Rask failed to demonstrate that she was able to perform one of the essential functions of her job which was to have "regular and reliable" attendance. *Id.* at 469. The court noted that her employer was not required to allow sudden, unscheduled absences from the job because such an accommodation would not be reasonable given the circumstances of her employment. *Id.* at 470.

Turning again to the case at bar, Feldman argues that perfect attendance for an employee scheduled to be on duty every day cannot and should not be considered an essential function of the job. Perhaps. But those are not the facts in this record. Although Feldman initially agreed to work seven nights a week, he later negotiated to receive one night off per month, which was increased to two after Feldman requested extra time off "just to relax and go out with friends." Feldman also conceded that he received one or two weeks of vacation time and was able to take sick time as necessary. In short, his abrupt departure on August 9 with no notice to his employer is wholly inconsistent with the "regular and reliable" attendance standard which is an essential function of a job. *Rask*, 509 F.3d at 469. Point II is denied.

---

[2] Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (1990).

## Conclusion

The judgment of the trial court granting summary judgment for the Respondents is affirmed.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.