Mary F. MOBLEY, Plaintiff,

v.

BOARD OF REGENTS OF the UNIVER-SITY SYSTEM OF GEORGIA, d/b/a Augusta College; Augusta College; Dr. William A. Bloodworth, Jr., in his official capacity as President of Augusta College or through his employees; Dr. Martha K. Farmer, in her individual capacity, Defendants.

No. CV195–051.

United States District Court, S.D. Georgia, Augusta Division.

April 1, 1996.

6. As a courtesy to the clerk of court, this court notes that this Order terminates entry no. 43 on the docket sheet.

Samuel Warren Cruse, Augusta, GA, for plaintiff.

Dennis Robert Dunn, Assistant Attorney General, Atlanta, GA, Rebecca Sue Mick, Patricia Guilday, State Law Department, Atlanta, GA, for defendants.

N. Kenneth Daniel, Allgood & Daniel, Augusta, GA, for Dan Troutman, movant.

## ORDER

BOWEN, District Judge.

Before the Court in the above-captioned matter is the Defendants' Motion for Summary Judgment as to Plaintiff's Americans with Disabilities Act ("ADA") claims and Defendants' Motion to Dismiss Plaintiff's state law claims. Upon consideration of the briefs submitted by counsel, **IT IS HEREBY ORDERED** that both Defendants' motion for summary judgment on Plaintiff's ADA claims and Defendants' motion to dismiss Plaintiff's Georgia law claims are hereby **GRANTED** for the reasons set forth below.[1]

Plaintiff has filed a motion to disqualify the counsel for the Defendants, and, in response, Defendants have filed a motion for sanctions under Fed.R.Civ.P. 11 against counsel for the Plaintiff. Plaintiff's motion to disqualify is **DENIED,** and Defendants' motion for sanctions is **DENIED.**

---

1. Plaintiff also filed a motion for summary judgment in this case, the substance of which is the same as that of the Defendants' motion for summary judgment. In granting Defendants' motion for summary judgment, Plaintiff's motion for summary judgment is necessarily **DENIED**.

## I. Background for Plaintiff's ADA Claim

Plaintiff Mary F. Mobley is an employee of the Defendant Augusta College. Plaintiff began working for Augusta College as an Assistant Professor in the School of Business Administration in 1982 and became a tenured Associate Professor in 1988. In 1993, Plaintiff became a tenured full Professor with the School of Business Administration, which is the position at Augusta College she occupies today. Until the events that comprise this lawsuit took place, Plaintiff's office at Augusta College was in Markert Hall at all times since 1982. The classrooms in which she taught and the rooms in which most faculty meetings were held were also located in Markert Hall.

In late spring of 1992, Plaintiff began making complaints to the Augusta College administration regarding the air quality in Markert Hall, where her office ("Office #16") was located.[2] Dr. James T. Tippett, a widely known and respected local specialist in internal medicine, first treated Plaintiff on May 8, 1992, for a condition believed to be asthma or asthmatic bronchitis. On July 3, 1992, Dr. Tippett provided a "to whom it may concern" letter which Plaintiff gave to college Vice President Bill Bompart. The letter read:

> Ms. Mobley is actively treated in my office and is having recurrent problems with bronchitis. She informs me that she is working in a cool damp environment. It is necessary that Ms. Mobley be in a controlled environment to prevent continued recurrent flare ups of bronchitis.

Dr. James T. Tippett Letter of July 3, 1992.

Plaintiff was treated again for this condition on July 23, 1992. Dr. Tippett provided Mr. Bompart with another letter on this date stating:

> Mary Mobley is followed actively in my office and is employed at Augusta College. She recently has been having difficulty with recurrent asthmatic bronchitis. Historically, it seems as though her office environment is a significant culprit in precipitating the episodes. She was recently in the office and inquired as to whether she should purchase some type of air purifier. From her description of the environment, I do not think this would be worthwhile and I have informed her that her employer should be responsible for improving the environment. With recurrent episodes of asthmatic bronchitis, she is at risk for developing disabling lung disease in the future.
>
> In summary, she needs a work environment that as much as possible, is free of dust and it would be ideal if she could control the temperature of her office environment. Inappropriate temperatures can also result in acute exacerbations of the asthma.
>
> I trust that some kind of action will be taken concerning this in the very near future.
>
> If further information is needed, we will be happy to provide it.

Dr. James T. Tippett Letter of July 23, 1992.

Plaintiff allegedly also provided two memoranda, one to Mr. Bompart on July 8, 1992, and another on July 29, 1992, to Mr. Bompart, acting Dean Dalton Brannen, and Dr. Martha Farmer relating her respiratory problems.

While it is not entirely clear from the record, at some time in early fall of 1992, Defendants conducted an investigation of the air quality in Plaintiff's office area. This study indicated that a "severe ventilation problem" in Markert Hall existed.[3] The study confirmed the existence of humidity and filtration problems, as well as the existence of some asbestos fibers and high carbon dioxide levels in some areas.[4] The College also conducted other follow-up environmental studies of its buildings from 1992

---

**2.** From the information adduced in the record, Plaintiff was not alone in her concerns about the air quality in Markert Hall. Other faculty members also expressed concern about the air quality and allegedly experienced respiratory problems they believed to be linked to this particular building.

**3.** *See* Exhibit H to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (SGI Ventilation Analysis Report, Executive Summary).

**4.** *Id.*

to 1994 and arranged for a contractor to balance the Markert Hall ventilation system. *See* Exhibit J to Plaintiff's Brief in Opposition to Motion for Summary Judgment. Defendants contend that air quality at Augusta College has been improved as a result of these studies, but that no significant air quality threats existed at the College.

As an attempt to help Plaintiff while studies were being conducted, Defendants moved Plaintiff from Office #16 to Office A, a converted storeroom outside the Markert Hall complex with an individual unit ventilator which enabled Plaintiff to control the temperature in her office. Plaintiff alleges that her move was unnecessarily delayed because Dean Brannen failed to make a timely decision. She also alleges that Dean Brannen told her she would probably have to move back to Office #16 after only two weeks in Office A, and that she experienced considerable pressure to relinquish Office A and move back into the Markert Hall complex from other college administrators.[5]

Despite this pressure, Plaintiff remained in Office A through early 1993.[6] Plaintiff provided a letter to Dr. Farmer through Charles L. Wilkinson III, her attorney at the time, on January 5, 1993, stating that any efforts to move Plaintiff from Office A or any acts of harassment or discrimination directed at Plaintiff would be considered violative of the ADA. The letter also provided that the college was required to make a reasonable accommodation to Plaintiff on account of her asthmatic condition, which constituted a "disability" under the ADA. Apparently, this letter is the first reference in the record to the ADA or to any potential disability of the Plaintiff thereunder.

On February 16, 1993, counsel for the Defendants requested from Mr. Wilkinson any medical records or other information that would assist Augusta College in evaluating and assessing Plaintiff's medical needs, as well as any evidence that there existed "any other danger to the public health, safety or well-being of any other employee at the College." Letter to Charles L. Wilkinson III at 1 (dated February 16, 1993). The letter also stated that the Defendants were prepared to arrange an independent medical evaluation for Plaintiff in the event medical documentation could not be obtained.[7] Mr. Wilkinson responded by letter dated April 8, 1993, that he was "puzzled" at the Defendants' request for medical documentation.

On April 16, 1993, Defendants reiterated their request for further medical documentation. Defendants' letter noted that the two notes from Dr. Tippett did not constitute "adequate medical information" to ascertain Plaintiff's condition and how to remedy it and again offered to arrange an independent medical evaluation for Plaintiff. On July 26, 1993, Plaintiff filed a charge with the EEOC, alleging discrimination under the ADA.

Plaintiff provided on April 15, 1994, another "to whom it may concern" note from Dr. Tippett, this time stating only: "Ms. Mary Mobley is followed actively in my office and secondary to medical problems, I feel it is necessary for her to take a 6 week leave of absence beginning April 19th." Dr. James L. Tippett Letter of April 15, 1994.

On August 2, 1994, Plaintiff missed a business school faculty meeting held in Room 7 of Markert Hall. By way of memorandum addressed to Jack Widener (Dean of the School of Business Administration), Plaintiff requested that the faculty meetings be held elsewhere as a reasonable accommodation to her asthmatic condition. Plaintiff stated that she was under doctor's orders to stay away from Markert Hall and therefore had chosen not to attend the meeting.

On August 19, 1994, Jack Widener responded to Plaintiff's memorandum, stating: "I am presently involved in discussions concerning your request for accommodations

---

5. *See* Letter from Charles L. Wilkinson to Dr. Martha Farmer of January 5, 1993. (Exhibit 4 to Defendants' Motion for Summary Judgment).

6. It is unclear from the record when or if Plaintiff moved back into Markert Hall.

7. Pursuant to 29 C.F.R. 1630.14(c), an employer covered by the ADA "may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions."

about the location of future SoBA Faculty Meetings. I intend to answer your request when these discussions are concluded." Dr. Tippett later provided a two-page note on September 27, 1994, providing a brief medical history and a diagnosis of "acute bronchitis with an asthmatic component." Dr. James T. Tippett Letter of September 27, 1994 at 1. The September 27 letter explained briefly the events surrounding Plaintiff's complaints to the college and Dr. Tippett's belief that Plaintiff's problems "correlated with time spent in her work environment at Augusta College." *Id.* at 2.

While it is not clear from the record, at some time in late 1994, the Defendants proposed the purchase of equipment to improve air quality in Markert Hall. Plaintiff rejected these proposals, allegedly because they were not offered in "good faith." According to the Plaintiff, the proposed equipment was a spot cooler that would have exacerbated the Plaintiff's condition. Defendant, on the other hand, asserts that they attempted to keep their employee happy by offering what they could based upon their limited knowledge of Plaintiff's alleged medical condition.

Plaintiff's ADA claim rests principally upon the notion that the Defendants created a hostile work environment based upon the Plaintiff's disability. Plaintiff argues that the Defendants' "bullying" and "aggressive behavior" toward her were acts which violate the ADA. Plaintiff also includes Defendants' requests for medical documentation of her alleged disability as harassing events that violated the ADA. In addition to the alleged "abuse" at the hands of the Defendants, Plaintiff specifically alleges that she was excluded from recruiting activities in marketing;[8] that she has suffered inequities in travel funding and course loads as a result of the discrimination; that she has been denied access to faculty meetings; that Defendants have not accommodated her in providing her classroom assignments; and that the Defendants have copied junior faculty on their memoranda concerning Plaintiff's alleged disability in an effort to denigrate her. Plaintiff

offers no affidavits or corroborating evidence in support of these allegations; rather, Plaintiff's naked allegations are all the evidence that exists to support these purported acts of discrimination.

Defendants assert that Plaintiff does not possess a recognized disability under the ADA. Specifically, Defendants cite cases under the Rehabilitation Act of 1973 holding that breathing ailments which keep an individual from performing a particular job do not constitute a disability under the Act. Furthermore, they argue that they have in no way regarded Plaintiff as disabled through their actions. Defendants assert that they have acted on incomplete and insubstantial information in a simple effort to keep their employee happy and at all times have requested medical documentation from the Plaintiff. Finally, Defendants contend that Dr. Tippett's letters can hardly be said to create a "record" of a disability under the ADA. As a result, Defendants argue that Plaintiff has failed to make out a prima facie case of discrimination under the ADA.

Defendants also argue that, even if Plaintiff has a disability that is recognized under the ADA, Plaintiff provided inadequate medical documentation in support of her requests for reasonable accommodation. Defendants point out that they have in no way resisted Plaintiff's requests for accommodation. In fact, Defendants note that they have allowed her to move her office, have offered equipment they believed would help alleviate the Plaintiff's problems, and have acted in good faith in inquiring about the specifics of Plaintiff's condition and in attempting to accommodate Plaintiff.

## II. Requirements for Summary Judgment

 Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,*

---

**8.** Plaintiff's complaint provides that Jack Widener, Dean of the School of Business Administration, retaliated against her and selected Dr. Barbara Coleman instead of Plaintiff to represent the College at a recruiting conference in New Orleans in 1994.

477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case . . . , no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608.

■ If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2514. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.

### III. Analysis of Plaintiff's ADA Claims

■ There exists little in the way of precedent in this circuit interpreting the provisions of the ADA. Cases decided under the rubric of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (1993), offer some guidance. *See Interpretive Guidance on Title I of the Americans with Disabilities Act*, 29 C.F.R. § 1630, Appendix at 400–02 (1993) (recognizing Congressional intent to rely on Rehabilitation Act standards in interpretation of ADA claims). The interpretive guidelines to the ADA itself at 29 C.F.R. § 1630, *et seq.*, are also instructive.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.

§ 12111(8). The ADA only protects such qualified individuals with disabilities.[9]

█ It is Plaintiff's burden to set forth a prima facie case under the ADA by showing: (1) that she is a qualified individual who suffers from a disability; (2) that she has suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the disability. *Smith v. Upson County*, 859 F.Supp. 1504, 1514 (M.D.Ga.1994), *aff'd*, 56 F.3d 1392 (11th Cir.1995) (table disposition).

The ADA defines disability as (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; (C) or being regarded as having such impairment. 42 U.S.C. § 12102(2). An individual may qualify for protection under the ADA by meeting any one of these three definitions. Plaintiff argues that she has a disability under any of these three definitions.

**A. Physical or Mental Impairment.** As her notes from Dr. Tippett state, Plaintiff has been diagnosed with some form of asthmatic condition.[10] Although Plaintiff arguably has a physical impairment, Dr. Tippet's notes provide scant information regarding the actual infirmity. Despite Defendants' requests for specific medical data, Plaintiff has provided no clinical findings, medical opinions, or other medical documentation. At best the medical evidence offered by the Plaintiff is unclear and inconclusive. For the purposes of this Order, however, it will be assumed that the Plaintiff possesses a bona fide physical impairment.

█ **B. Substantial Limitation of a Major Life Activity.** Determining that Plaintiff has a physical impairment is only the first step in assessing whether or not she is disabled for the purposes of the ADA. Plaintiff must also show that her physical impairment *substantially limits* her in the

performance of some major life activity. Plaintiff alleges that her asthmatic condition inhibits her ability to work and to breathe. Without question, breathing or working constitute major life activities under the ADA. *See* 29 C.F.R. § 1630.2(i). It is not enough, however, that an impairment simply *affects* a major life activity—under the language of the statute, an impairment must *substantially limit* a major life activity.

Under this prong of the ADA, the Court must inquire whether the individual is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities. 29 C.F.R. § 1630.2(j). The inability to perform a "single, particular job," however, does not constitute a substantial limitation on the ability to work. *Id.*

In this case, Plaintiff alleges that she is effectively foreclosed from employment as a collegiate professor of marketing for the entire Augusta area because she allegedly cannot work in Markert Hall. On the contrary, assuming *arguendo* that she does have a physical impairment, the evidence in the record serves to support the contention that Plaintiff is foreclosed only from working in Markert Hall. Such a limitation hardly prevents Plaintiff from performing a broad class of jobs or, for that matter, significantly impairs her ability to teach at Augusta College or in the Augusta area. Regulations accompanying the ADA clearly set out that an inability to perform a single, particular job does not constitute a substantial limitation. *See id.* In this case, Plaintiff is not even restricted from performing a single, particular job: she is only restricted from working a single, particular job at a single, particular location.

█ Defendants cite to this Court a long string of precedent which interprets the term

---

9. In this case, there is no argument from the Defendants that Plaintiff is qualified to perform her job as a professor of marketing. Rather, Defendants' argument rests upon the premise that the Plaintiff does not possess a disability and is therefore not protected by the provisions of the ADA.

10. The actual medical term is unclear from the letters provided by Plaintiff. The ailment is described as "bronchitis," "recurrent asthmatic bronchitis," and "acute bronchitis with an asthmatic component." This Order refers to the Plaintiff's ailment as an "asthmatic condition."

"substantially limits" under the Rehabilitation Act.[11] Under this line of cases, virtually every circuit has agreed that a condition which only prevents a claimant from working one particular job is not a disability under the Rehabilitation Act.[12] The facts of this case present just such a situation: Plaintiff's alleged infirmity does not preclude her from teaching as a professor of marketing at Augusta College or anywhere else in the Augusta region. Instead, the only location that presents a problem for the Plaintiff is Markert Hall. Certainly, even under the loosest construction, Plaintiff cannot be said to have a recognized disability that "substantially limits" her ability to work.

Furthermore, Plaintiff presents no evidence that she is in any way impaired in her breathing or, for that matter, in the performance of any other major life activity. Plaintiff instead relies on the conclusory statement that it is "obvious" that an asthmatic condition impacts an individual's ability to breathe.[13] Plaintiff offers nothing in the way of explanation as to the nature, severity, duration, impact, or extent of the asthmatic condition from which she allegedly suffers.[14] The record provides no evidence, expert or otherwise establishing that Plaintiff is limited in her ability to perform activities such as breathing, walking, running, exercising, caring for herself, speaking, or any other everyday activity.

In fact, Plaintiff has submitted no evidence that her condition substantially limits or even remotely affects her ability to breathe outside the Markert Hall environment. On the contrary, Plaintiff's own physician states that her condition was much improved after she spent time away from her office at Markert Hall. *See* Dr. James Tippett Letter of September 27, 1994 at 1 ("... [I]t seemed as though that while she was away from the environment at work that she had much less difficulty with the respiratory symptoms."). Consequently, apart from Plaintiff's assertion that it is "obvious" that asthmatic conditions can affect an individual's breathing, there exists no proof that Plaintiff suffers any limitations related to any major life activity that are not related to Markert Hall. Such a dearth of evidence cannot support the existence of a disability under this definition.

■ **C. Record of Substantially Limiting Impairment.** Under the second definition of disability, Plaintiff can qualify for coverage under the ADA by showing that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life

11. *See, e.g., Gupton v. Commonwealth of Virginia,* 14 F.3d 203, 205 (4th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994); *Cook v. Rhode Island, Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17, 26 (1st Cir.1993); *Chandler v. City of Dallas,* 2 F.3d 1385, 1391–92 (5th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994); *Byrne v. Board of Educ.,* 979 F.2d 560, 565 (7th Cir.1992); *Welsh v. City of Tulsa,* 977 F.2d 1415, 1417–18 (10th Cir.1992); *Maulding v. Sullivan,* 961 F.2d 694, 698–99 (8th Cir.1992), *cert. denied, Maulding v. Shalala,* 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Miller v. AT & T Network Sys.,* 915 F.2d 1404 (9th Cir.1990) (adopting district court opinion at 722 F.Supp. 633 (D.Or. 1989)); *Daley v. Koch,* 892 F.2d 212, 214–16 (2d Cir.1989); *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1249–50 (6th Cir.1985).

12. Plaintiff argues that Rehabilitation Act cases are not binding upon the Court. While this may be true, it is the clear intent of the Congress that the courts utilize Rehabilitation Act cases in interpreting the ADA.

Plaintiff also asserts that these cases, particularly the *Maulding* and *Heilweil* cases, are inapposite because the plaintiffs in those cases claimed they already suffered from a disability which was aggravated by their work environments. Plaintiff argues that the work environment in the present case directly caused her ailment. This is a distinction that does not make a difference. Plaintiff has advanced an ADA claim here, not a personal injury claim seeking recovery from the Defendants for her alleged respiratory ailment. For the purposes of her ADA claim, it makes no difference whether the Plaintiff had asthmatic bronchitis when she came to work for the Defendants or only suffered respiratory problems after working in Markert Hall for nearly 10 years.

13. Certainly, this Court recognizes that asthmatic conditions can affect people in many different ways. However, it is far from "obvious" that the Plaintiff's asthmatic condition affects her in a manner such that it constitutes a disability under the ADA.

14. Each of these factors is listed as relevant in any inquiry into whether an individual is "substantially limited." *See* 29 C.F.R. § 1630.2(j)(2).

activities." 29 C.F.R. § 1630.2(k). Plaintiff argues that Dr. Tippet's letters to the Defendants qualify her under this definition of disability. Plaintiff claims that the "clear narratives" and "clear medical documentation" provided in Dr. Tippet's notes to the Defendants detail her illness and the cause of it. As such, Plaintiff claims they serve to create a record of her impairment.

Plaintiff overstates the informational value of the notes from Dr. Tippett. First, Dr. Tippett's "to whom it may concern" notes provide little insight into what ailment actually plagues the Plaintiff. The three notes of Dr. Tippett use three different terms to refer to Plaintiff's as yet undefined ailment: "bronchitis" (Letter of July 3, 1992), "recurrent asthmatic bronchitis" (Letter of July 23, 1992), and "acute bronchitis with an asthmatic component" (Letter of September 27, 1994).

Second, Dr. Tippett's notes are sketchy as to what the Defendants should do to help alleviate the Plaintiff's condition. Dr. Tippett's notes suggest a "controlled environment" which is "free of dust," and propose that "it would be ideal if [Plaintiff] could control the temperature...." These suggestions describe ideal indoor conditions for any individual, regardless of whether they suffer from an asthmatic condition or not. Even the two-page note of September 27, 1994, from Dr. Tippett provides little in the way of specific potential causes of the Plaintiff's condition and concrete remedies therefor, despite Defendants' requests for medical information and remedial advice.[15]

In essence, Dr. Tippett's letters are abbreviated accounts of Plaintiff's asthmatic condition and how he believes it developed; they provide little in the way of medical history, useful clinical evaluation, guidance, or instruction which the Defendants could utilize to help the Plaintiff. They simply alert the Defendants to the possibility that Plaintiff's respiratory problems may have been aggravated by her work environment. Ironically, Plaintiff herself best states the limited pur-

pose of Dr. Tippett's letters in her opposition brief. Plaintiff concedes:

> Dr. Tippett's letters to the Defendants documenting Dr. Mobley's condition were for the purpose of informing the college and improving the Plaintiff's work environment. They were not intended to provide a detailed description of the Plaintiff's illness and how it affects other areas of her life.

Plaintiff's Response to Defendants' Motion for Summary Judgment at 11. On this point, Plaintiff is exactly right: Dr. Tippett's notes merely notify the Defendants that the Plaintiff has some as yet undefined asthmatic condition which he believes may be linked to the air quality in Markert Hall. Such documentation is simply too sketchy and incomplete. As such, the letters can hardly be said to create a record of a disability under the ADA.

However, while Dr. Tippett's letters do not offer much to support Plaintiff's ADA claim, they may be quite useful in attempts to address the apparent air quality concerns at Markert Hall. Whether Plaintiff is an American with a Disability is a question unrelated to another question—whether Markert Hall is a "sick building" potentially uncomfortable or even injurious to the general student and faculty population. Nothing in this review of the case for the special requirements of entitlement of ADA relief should deter Defendants from every reasonable effort to provide a reasonably safe and comfortable level of air quality in the buildings within their trust. To such ends, Dr. Tippett's letters and Plaintiff's experience may be valuable information.

 **D. Regarded as Having a Substantially Limiting Disability.** Plaintiff also argues that her condition falls under the third possible definition of disability under the ADA. For a Plaintiff to qualify under this definition, she must have been treated by her employer as if she had a disability; or her major life activities must be limited only as a result of the attitudes of others toward such disability; or she must have no disabili-

---

**15.** Dr. Tippett notes in his September 27, 1994 note that the "high dust levels and other environmental contaminants" as well as the "significant toxins in the air" contribute to exacerbate the Plaintiff's condition. Dr. Tippett points out that the commissioned study by the College specifies proper ventilation as a tactic that could eliminate some of the agents harmful to the Plaintiff.

ty, but still be treated as having one which substantially limits her by her · employer. *See* 29 C.F.R. § 1630.2(*l*). Plaintiff argues that the fact that Defendants moved her out of Markert Hall and made efforts to accommodate her necessarily means that the Defendants regarded her as having a disability.

The Defendants' actions, however, only constitute a preliminary attempt to appease the Plaintiff until a final determination could be made regarding her alleged disability and how to accommodate it. Defendants commissioned an air quality study of Market Hall when Plaintiff complained of respiratory problems, moved her to another office location, and even endeavored to respond to her requests for improved air quality. At all times, the Defendants requested further medical documentation from the Plaintiff and offered to conduct an independent examination of the Plaintiff to assess her medical needs. Nowhere in the record is there a statement from the Defendants that they recognized Plaintiff as being "disabled" within the meaning of the ADA. Defendants' efforts constituted only interim measures designed to give the Plaintiff some relief until the precise parameters of her alleged disability could be ascertained. Therefore, it is not a necessary conclusion that Defendants' offers to help the Plaintiff improve the air quality of her work environment means Defendants treated her as having a disability.

Under the ADA guidelines, any effort to reach a reasonable accommodation for a disability must necessarily involve an interactive process between employer and employee. *See* 29 C.F.R. § 1630, Appendix at 414. Certainly, this is even more important when the purported disability is not obvious, as with a lost limb, but is relatively imperceptible to the employer, as with the asthmatic condition in this case. Plaintiff, however, rejected each of Defendants' attempts to appease her as half-hearted and untimely. Plaintiff also failed to respond meaningfully to any of the Defendants' requests for more detailed information in 1993 and 1994. By that time,

Plaintiff had already taken the offensive in this litigation, firing off a letter from an attorney in January of 1993 and filing charges with the EEOC in July of 1993.

In essence, this lawsuit represents Plaintiff's effort to penalize the administration's reasonable interim efforts at appeasement. This lawsuit vitiates the policies underlying the ADA because it discourages employers from taking preliminary or temporary steps to keep their employees happy for fear that showing concern for an employee's alleged medical problems could draw them into court facing an ADA claim based upon a perceived disability. Accordingly, it is my conclusion that the Defendants did not regard Plaintiff as having a recognized and substantially limiting disability under the ADA.

### IV. Plaintiff's State Law Claims

In Count II of her complaint, Plaintiff alleges state law claims based on "fraud, conspiracy, and cover-up." Plaintiff's Complaint at 23. Count III alleges a violation of O.C.G.A. § 45–1–4, relating to complaints from public employees regarding fraud or abuse in state programs and operations. *Id.* at 31. In essence, Plaintiff claims that the Defendants have collectively defrauded the employees and students of Augusta College by fraudulently covering up and conspiring to cover up the fact that several buildings on the Augusta College campus are an "air quality death-trap." *Id.* at 19.[16] Plaintiff also alleges that Defendants utilized fraudulent and flawed environmental reports to support their contention that no significant air problems exist at Augusta College.

Defendants, on the other hand, assert that their environmental reports confirm that certain measures needed to be taken to improve ventilation and air quality in buildings at Augusta College, but that no significant air problems exist at Markert Hall or in any other campus facilities.

---

**16.** Plaintiff fails to mention that she has garnered much, if not all of the information about the air quality and environmental studies performed at the College pursuant to requests made under the Georgia Open Records Act, O.C.G.A. § 50–18–70, *et seq.* It is difficult to see how Defendants conspired to hide information from the Plaintiff or other members of the public when they made available the very data upon which Plaintiff bases her fraud and conspiracy claims.

██ Plaintiff has failed to make out a prima facie case under the ADA, and these state law claims are all that remain in this action. This Court has discretion under 28 U.S.C. § 1367(c) as to whether it should exercise supplemental jurisdiction over issues dealing solely with state law. Since this case involves parties who are all from the State of Georgia and most of whom reside in the Augusta area, resolution of this lawsuit is more appropriate at the state level. Accordingly, I see no need to keep these state claims at the federal level, and Defendants' motion to dismiss Plaintiff's state law claims is hereby **GRANTED.**

### V. Plaintiff's Motion to Disqualify Defendants' Counsel

Because all claims which comprise this action have been ruled upon, Plaintiff's motion to disqualify is hereby **DENIED** as moot.

### VI. Defendants' Motion for Sanctions

██ Defendants move for sanctions against counsel for the Plaintiff under Fed. R.Civ.P. 11(b)(1) and (b)(2). Rule 11 sanctions are proper under the following scenarios: "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Jones v. International Riding Helmets,* 49 F.3d 692, 694 (11th Cir.1995).

██ Defendants' motion rests entirely upon Plaintiff's motion to disqualify Defendants' counsel. Plaintiff contends in her motion to disqualify that Defendants' counsel improperly invoked the attorney-client privilege pursuant to Fed.R.Civ.P. 26(b)(3) during depositions conducted for this case. Defendants' counsel invoked the attorney-client privilege when Plaintiff's counsel deposed individuals concerning meetings in January 1993 wherein legal strategy was allegedly discussed with Defendants' counsel. Plaintiff argues that no attorney-client relationship existed in early 1993 because Plaintiff had neither filed an EEOC complaint nor served

notice of a suit at that time. Plaintiff further alleges that the State of Georgia Attorney General's Office participated with Augusta College officials and the Board of Regents in a conspiracy to cover up bad air quality at the College. *See* Plaintiff's Response to Defendants' Motion for Sanctions at 6. Consequently, Plaintiff's counsel seeks disqualification of Defendants' counsel in order to take their depositions and elicit information about the alleged conspiracy.

Defendants note that Plaintiff's counsel conceded at the depositions in question that the items were covered by the attorney-client privilege, but has now reversed his position. Defendants argue that Plaintiff's motion is simply a needless attempt to increase litigation by seeking to obtain undiscoverable information and to harass defense counsel.

Based upon the information submitted in support of the motion for sanctions in this case, I am not inclined to grant Defendants' motion for sanctions. While Plaintiff's counsel has engaged in an arguably misguided attempt to obtain protected information from the Defendants, I do not believe that this attempt was made in bad faith or for an improper purpose. Furthermore, simply because Plaintiff attempted to circumvent the attorney-client privilege does not necessarily warrant court-imposed sanctions. It is, therefore, my conclusion that the present record does not support Defendants' motion for sanctions. Accordingly, Defendants' motion for sanctions is **DENIED.**

### VII. Conclusion

Defendants' motion for summary judgment is hereby **GRANTED;** Defendants' motion to dismiss Plaintiff's state law claims is also **GRANTED;** Plaintiff's motion for summary judgment is **DENIED;** Plaintiff's motion to disqualify is **DENIED;** Defendants' motion for sanctions is **DENIED.**

**ORDER ENTERED.**