Barry KRAMER, Plaintiff(s),

v.

HICKEY–FREEMAN, INC., a/k/a
Hickey–Freeman Company
Defendant.

No. 98 Civ. 8661(JES).

United States District Court,
S.D. New York.

May 30, 2001.

Florrie L. Wertheimer, P.C., Florrie L. Wertheimer, Robin M. Wertheimer, of counsel, New York City, for Plaintiff.

Winston & Strawn, Susan Schenkel–Savitt, of counsel, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Barry Kramer ("Mr. Kramer" or "plaintiff") brings this action against his former employer, defendant Hickey–Freeman, Inc.("Hickey–Freeman" or "defendant") alleging disability discrimination against plaintiff in violation of the Americans with Disabilities Act ("ADA"), denial of unpaid leave in violation of the Family and Medical Leave Act ("FMLA"), and intentional infliction of emotional distress. Defendant now moves for summary judgment against plaintiff pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants defendant's motion.

## BACKGROUND

Plaintiff has bi-polar disorder, which is also known as manic depression. Plaintiff was first diagnosed with this disorder in 1960, and he received his first lithium treatment for it in 1971. *See* Declaration of Susan Schenkel–Savitt in Support of Defendant's Motion for Summary Judgment dated July 7, 2000 ("Savitt Decl."), Exhibit ("Exh.") 4, Deposition of Barry Kramer, May 11, October 14, and December 9, 1999 ("Kramer Depo.") at 50; Savitt Decl., Exh., 3, Plaintiff's Response to Defendant's First Request for Admissions dated April 21, 2000 ("Pl.Resp.") at ¶¶ 1–3. Plaintiff has maintained his lithium treatment from 1971 until today, including the entire period of his employment at Hickey–Freeman. *See* Pl. Resp. at ¶ 7. Lithium has effectively controlled and regulated plaintiff's bi-polar disorder and all of its symptoms. *See id.* at ¶ 9. Plaintiff's lithium regimen allowed him to perform all of his duties while employed by defendant. *See* Kramer Depo. at 312–13, 321–22.

Plaintiff began working as the Northeast Sales Manager for Hickey–Freeman, a wholly owned subsidiary of Hartmarx Corporation ("Hartmarx"), on or about September of 1991. *See* Pl. Resp. at ¶¶ 50–51. Plaintiff had worked as a salesperson for another Hartmarx subsidiary from approximately 1980 to 1986 and was supervised during that time by Howard Zenner. *See* Savitt Decl., Exh. 10, Declaration of Howard Zenner dated June 29, 2000 ("Zenner Decl.") at ¶ 3. After Mr. Zenner left the Hartmarx family of companies to work for Aquascutum in 1987, plaintiff successfully solicited a job from Mr. Zenner as a salesperson at Aquascutum. *See* Pl. Resp. at ¶¶ 40–42; Zenner Decl.¶ 4. In 1991, both Howard Zenner and plaintiff left Aquascutum and returned to Hartmarx. *See* Pl. Resp. at ¶¶ 47, 50; Savitt Decl., Exh. 7, Deposition

of Howard Zenner, September 29, 1999 ("Zenner Depo.") at 29. Mr. Zenner, who had recommended that plaintiff be hired by Hartmarx, ultimately became plaintiff's supervisor when plaintiff joined Hickey–Freeman in or about March 1993. *See* Zenner Depo. at 31–32, 51–52, 55–56. After his return to Hartmarx in 1991, plaintiff excelled in his position at Hickey–Freeman; in fact, defendant named him the 1993 Salesman of the Year, gave him the 1994 "World Class Award" for outstanding sales, and Messrs. Hand and Zenner even recommended plaintiff for a promotion to a Vice President's position. *See* Weiner Depo. at 51; Montanarella Exh. A, Pl. Resp. at ¶ 70.

Beginning sometime in 1995, plaintiff became unhappy with his treatment at the hands of Mr. Zenner. *See* Affidavit of Plaintiff dated October 12, 2000 ("Pl.Affidavit") at ¶ 3. This unhappiness caused plaintiff to seek the assistance of a psychologist in July of 1995, and ultimately plaintiff was prescribed Ativan in February of 1997 to help him with the anxiety allegedly induced by Mr. Zenner. *See id.* By April 9, 1997 plaintiff had become so unsatisfied with his work conditions that he wrote Hartmarx's Chairman and CEO, Elbert Hand, asking that Mr. Hand either transfer plaintiff to a job that didn't report to Mr. Zenner or arrange for plaintiff to receive a severance package. *See* Savitt Decl., Exh. 12, Declaration of Elbert Hand dated July 5, 2000 ("Hand Decl.") at Exh. A. Mr. Hand indicated that plaintiff should raise his concerns with both Steven Weiner, who was then the Chief Operating Officer of Hickey–Freeman, and Howard Zenner; plaintiff then met with the two men on May 5, 1997. *See* Pl. Resp. at ¶¶ 23–24; Hand Decl. at ¶ 4; Savitt Decl., Exh. 11, Declaration of Steven Weiner dated June 30, 2000 ("Weiner Decl.") at ¶ 5; Savitt Decl., Exh. 9, Deposition of Steven Weiner, December 13, 1999 ("Weiner Depo.") at 59–60. At that meeting, Messrs. Zenner and Weiner suggested to plaintiff that he take some time off from work. *See* Weiner Tr. at 59–60. Plaintiff agreed and ultimately decided that he would begin his leave of absence from work that day.

Plaintiff alleges that before his leave of absence both Mr. Hand and Mr. Weiner were aware that plaintiff suffered from bi-polar disorder. *See* Pl. Affidavit at ¶ 5. Plaintiff indicates that he told Mr. Hand about his bi-polar disorder for the first time around 1992. *See* Kramer Depo. at 207, 318. He claims to have told Mr. Weiner at the above-described May 5, 1997 meeting before Mr. Zenner entered the room. *See* Pl. Affidavit at ¶ 5. Mr. Hand, Mr. Weiner and Mr. Zenner all deny that they were aware of plaintiff's condition prior to the initiation of this lawsuit. *See* Deposition of Elbert Hand, March 23, 2000 ("Hand Depo.") at 23; Zenner Depo. at 101–02; Weiner Decl. at ¶ 7. In accordance with the Court's duty to give the non-moving party the benefit of every rational inference in his favor, the Court will presume for the purposes of this motion that Mr. Hand was aware of plaintiff's disorder in 1992 and that Mr. Weiner was aware of it as of May 5, 1997.

Thereafter, plaintiff and various employees of defendant exchanged several letters regarding the terms of plaintiff's leave. In the course of these exchanges defendant made clear to plaintiff that: 1) he would be required to periodically fill out medical certifications to be eligible for the twenty-six (26) weeks of short-term disability leave available to Hickey–Freeman employees; and 2) his FMLA leave ran concurrently with and would be applied against his first twelve (12) weeks of short-term disability leave. *See* Weiner Decl., Exhs. B, C; Declaration of Karen Montanarella dated June 29, 2000 ("Montanarella Decl."), Exh. D. Plaintiff's responses to defendant's communiques indicate that

plaintiff assumed he would be guaranteed a job of equal responsibility and compensation when he returned from a six-month leave he characterized as a "sabbatical." *See* Weiner Decl., Exhs. A, D.

Despite reminders sent to plaintiff regarding his continuing duty to submit a medical certification every thirty (30) days, plaintiff submitted only one such certification during his nearly four (4) months of leave. *See* Montanarella Decl. at ¶¶ 12, 19, Exh. D; Pl. Resp. at ¶¶ 112–14. Plaintiff also failed to submit any certification indicating that he was medically fit to return to full-time duty. *See* Montanarella Decl. at ¶ 19; Pl. Resp. at ¶¶ 50–54. On or about September 24, 1997 defendant sent plaintiff a letter terminating him and indicating that his termination resulted from plaintiff's failure to comply with defendant's leave policy and other performance related issues. *See* Weiner Decl. at Exh. E. Due to difficulties with delivery, plaintiff did not receive this letter until October 7, 1997. *See* Pl. Resp. at ¶ 189. Prior to his receipt of such termination notice, plaintiff sent a letter to defendant indicating that he expected to return to work in November and that he did not wish to work for Mr. Zenner upon his return. *See* Weiner Decl. at Exh. F.

Mr. Kramer filed the instant suit on December 7, 1998. In it plaintiff claims that his termination was based on an impermissible discriminatory purpose that violates the ADA. Plaintiff further alleges that he was terminated prior to the expiration of his FMLA leave. Defendants respond that they were unaware of plaintiff's bi-polar disorder until the filing of the instant suit and therefore could not have possessed the discriminatory intent required under the ADA. Moreover, defendants respond that plaintiff's FMLA leave ran concurrently with the first twelve (12) weeks of his short-term disability leave

and that his FMLA leave therefore expired in July of 1997.

## DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a *prima facie* case. *See Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998). In order to establish a *prima facie* case of discriminatory discharge, a plaintiff must show that (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he was fired because of his disability. *See id.* at 869–70. Plaintiff has failed to meet this burden because he has not demonstrated that he suffers from a disability within the meaning of the ADA.

■ The ADA defines the term disability as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; or (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In the instant case, plaintiff claims he is disabled under the first and third definitions of disability. The Court finds, however, that plaintiff's bi-polar disorder does not substantially limit a major life activity and that defendant did not regard plaintiff as so limited.

Plaintiff suffers from an impairment—bi-polar disorder—and claims that it substantially limits the major life activity of working. The Court disagrees. The record is undisputed that lithium, and, when necessary, Ativan, controlled the symptoms of plaintiff's impairment and allowed him to perform all of the duties of his job. *See* Kramer Depo. at 312–13, 321–22; Pl. Resp. at ¶ 9. Plaintiff emphasizes that lithium alone was insufficient to control his symptoms once Mr. Zenner began harassing him and that he was required to take Ativan beginning in February 1997 as a result. *See* Kramer Affidavit at ¶ 3. However, plaintiff admits that Ativan helped alleviate his symptoms. *See* Kramer Depo. at 211; Pl. Resp. at ¶ 101. Moreover, plaintiff announced his intention and ability to return to work in October of 1997—something he would presumably be able to do with or without the added assistance of Ativan. In any event, the Supreme Court has made it clear that mitigating measures such as effective medical treatment must be taken into account in determining whether an impairment is

substantially limiting. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The Court emphasized:

A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limi[t]" a major life activity.

*Id.* (alteration in original).

In the instant case, plaintiff has made it clear that medication controls his symptoms so that he is able to work.[1] Plaintiff's condition is alleviated by taking lithium and, when necessary, Ativan. Accordingly, the Court finds that plaintiff is not disabled within the meaning of the ADA because he is not substantially limited in the major life activity of working.[2]

■ Alternatively, plaintiff alleges that Hickey–Freeman regarded him as disabled. "[W]hether an individual is regarded as having a disability turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 646 (2d Cir.1998) (internal quota-

---

1. For instance, during his deposition, plaintiff testified:

Q. But when you're taking Lithium, you don't feel that you're disabled, correct?
A. Correct.

Kramer Depo. at 320.

2. Plaintiff does not seem to allege that any other major life activity, such as sleeping or lifting, is substantially limited.

tions omitted). To meet his burden under this definition of disability, plaintiff must show that defendant regarded him as disabled within the meaning of the ADA. *See id.* Plaintiff must therefore show that defendant perceived plaintiff as substantially limited in the major life activity of working. Hence, Mr. Kramer must prove "that [defendant] perceived [him] to be incapable of working in a broad range of jobs suitable for persons of [his] age, experience, and training." *Id.* at 647. Plaintiff has failed to make such a showing.

First, the Court cannot accept that defendant's offer to grant plaintiff a leave of absence itself proves that defendant regarded plaintiff as disabled. According to plaintiff, employers only offer medical leave to employees they view as substantially limited in a major life activity. The United States Court of Appeals for the Second Circuit has not determined whether placing an employee on medical leave is, by itself, sufficient evidence to create an issue of material fact regarding whether an employer regarded that employee as disabled. However, like other courts that have addressed this question, the Court finds that to accept plaintiff's argument would "discourage[ ] employers from taking such preliminary or temporary steps to keep their employees happy for fear that showing concern for an employee's alleged medical problems could draw them into court facing an ADA claim based on a perceived disability." *Mobley v. Board of Regents of the Univ. Sys. of Georgia,* 924 F.Supp. 1179, 1188 (S.D.Ga.), *vacated on other grounds,* 26 F.Supp.2d 1374 (S.D.Ga. 1996); *accord Cody v. CIGNA Healthcare of St. Louis, Inc.,* 139 F.3d 595, 598–99 (8th Cir.1998); *Johnson v. Boardman,* 923 F.Supp. 1563, 1568–69 (S.D.Ga.1996).

In short, plaintiff fails to explain how an offer of medical leave such as the one made to him demonstrates that defendant

perceived him as substantially limited in a "broad range of jobs suitable for persons of [his] age, experience, and training." Indeed, no rational jury could find that defendant perceived plaintiff as disabled because, subsequent to 1992 when plaintiff allegedly told Mr. Hand of his bi-polar disorder, defendant named him the 1993 Salesman of the Year, gave him the 1994 "World Class Award" for outstanding sales, and Messrs. Hand and Zenner even recommended plaintiff for a promotion to a Vice President's position. *See* Weiner Depo. at 51; Montanarella Exh. A, Pl. Resp. at ¶ 70. It follows that his claims under the ADA are hereby dismissed.

■ Plaintiff's allegations under the FMLA are similarly without merit. Despite his strong protestations to the contrary, plaintiff cannot rebut the evidence showing that his twelve (12) weeks of FMLA leave ran concurrently with, and expired after, his first twelve (12) weeks of leave under Hickey–Freeman's short-term disability policy. In particular, defendant made clear in a July 21, 1997 letter to plaintiff that his twelve (12) weeks of FMLA leave began to run on the first day of his leave of absence in May and were concurrent with his short-term disability leave. *See* Montanarella Decl. at Exh. D. Certainly, having been so informed, plaintiff cannot now reasonably claim, as he does, that it was unclear whether his termination on September 24, 1997 occurred in the midst of his FMLA leave. Such an argument defies credulity and no rational jury could accept it. Thus the Court rejects plaintiff's claim pursuant to the FMLA.

Lastly, having denied plaintiff's federal causes of action, the Court declines to exercise its discretion to consider plaintiff's state law claim of intentional infliction of emotional distress. *See* 28 U.S.C. § 1367(c). The Court therefore dismisses

this claim without prejudice to being renewed in the appropriate state court venue.

## CONCLUSION

For the foregoing reasons the Court grants defendant's motion for summary judgment and dismisses all of plaintiff's claims. The Clerk of the Court is hereby directed to close the above-captioned action.

It is **SO ORDERED.**