Real v. Riverbend Comm. MH          CV-98-334-JD  01/26/99

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Michael J. Reale

     v.                              Civil No. 98-334-JD

Riverbend Community
Mental Health Inc., et al.


                         O R D E R


     The plaintiff, Michael Reale, brings this action against the

defendants, Riverbend Community Mental Health Inc. and Karl

Boisvert, asserting violations of the Americans with Disabilities

Act and the federal Rehabilitation Act, and state law claims of

intentional infliction of emotional distress, breach of contract,

wrongful discharge, defamation, intentional interference with

contractual relations, and a violation New Hampshire's Law

Against Discrimination.  Before the court now is the defendants'

motion to dismiss, or in the alternative, for judgment on the

pleadings (document no. 6).


                        Background

     The plaintiff was initially hired by Riverbend Community

Mental Health Inc. ("Riverbend") on June 16, 1986, although the

record does not reveal his position at that time.  Over the next

ten years the plaintiff was repeatedly promoted, ultimately

achieving the position of administrative coordinator of residential services.

For the majority of his tenure at Riverbend, the plaintiff received favorable evaluations and high praise and commendations for his work. For example, in a 1993 evaluation by Dr. James Wells, the plaintiff was found to perform oustandingly in community relations and marketing, to consistently meet expectations in the area of professional growth, and to perform at an above-average level or better in all remaining areas. The plaintiff also received unsolicited praise from colleagues and others for his performance at Riverbend.

In 1994, Riverbend's employees discovered that the plaintiff suffered from Attention Deficit Hyperactivity Disorder, or ADD.[1] They also came to perceive the plaintiff as suffering from a manic-depressive or bipolar disorder. At this juncture, Riverbend's employees' perceptions of the plaintiff's performance and abilities declined. His superior, Boisvert, came to regard the plaintiff as incapable of producing timely, quality written work. Boisvert and another employee prevented the plaintiff from participating in employment-related meetings with individuals that the plaintiff had worked with. The plaintiff was relegated

---

[1]The plaintiff uses the terms ADD and Attention Deficit Hyperactivity Disorder interchangeably.

2

to working from a broom closet, and his mental health became the subject of Boisvert's and other employees' humor. Moreover, Boisvert dismissed the plaintiff's work-related decisions as irrational emotional obstructions and the product of the plaintiff's emotional disposition. Boisvert asserted that the plaintiff was unable to think and communicate rationally. Meanwhile, the plaintiff received an unsolicited letter of thanks from Corinne Stuttz for his helpfulness, presumably for the manner in which he fulfilled his employment obligations.

After the positive 1993 evaluation of the plaintiff, a lapse of otherwise routine evaluations ensued. In 1996, Boisvert initiated a "special review" of the plaintiff in which the plaintiff received poor evaluations. Boisvert also stated that "[the plaintiff] has demonstrated a pattern of emotional reaction in situation [sic] that creates significant obstacles," and was "impulsive." Compl. at 8. Boisvert refused to provide specific instances as examples. He also refused to submit the special evaluation for review by other peers or staff, or to allow for a second evaluation, as required by Riverbend policies.

In June of 1996, Boisvert stated that no one liked or trusted the plaintiff and claimed that the plaintiff fabricated information. He gave the plaintiff an ultimatum that he resign with dignity, change, or be fired. Boisvert's intentions were to

3

exacerbate the situation and take advantage of the plaintiff's real and perceived difficulties. The plaintiff sought accommodations to ameliorate the situation, including acquiring an administrative assistant. Boisvert refused the request for an administrative assistant, although the position had already been funded. On June 14, Boisvert withdrew his offer to allow the plaintiff to change his performance and required him to resign or be fired.

The plaintiff, at his doctor's "request," asked for a two week medical leave for health related reasons, providing the plaintiff an opportunity to recuperate. The plaintiff had already accumulated two weeks of compensation time and arranged for contingencies. Boisvert repeatedly called the plaintiff and demanded that he return immediately, despite the acknowledged lack of emergency at work. Boisvert wished to interrogate the plaintiff, but refused to state the subject of the interrogation.

On July 5, 1996, the locks on the plaintiff's office were changed, and a letter of termination issued on July 11, 1996. The stated basis for termination was that plaintiff had directed staff to be uncooperative, shared personnel information with staff, and destroyed program files. The plaintiff had never received any other notice of such infractions.

The plaintiff was not offered the process provided in

4

Riverbend's Employee Handbook, and he was never given an opportunity to hear specific details of the accusations or review evidence in support of the accusations. He was not paid minimum severance pay in a timely manner.

On July 12, 1996, Boisvert issued a letter prohibiting staff from allowing the plaintiff access to Riverbend grounds. The intent was to create a false impression that the plaintiff was dishonest, and to embarrass, shame, and injure the plaintiff.

On May 26, 1998, the plaintiff filed this action in the United States District Court for the District of New Hampshire. The plaintiff alleges violations of, inter alia, the Americans with Disabilities Act, the federal Rehabilitation Act, and New Hampshire's Law Against Discrimination, and brings various state claims. The defendants move for dismissal or judgment on the pleadings on all counts. The court addresses the defendants' arguments seriatim.

## Discussion

A.  Standard of Review

The defendant moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Pursuant to Rule 12(c), a motion for judgment on the pleadings will be granted if, accepting all of the plaintiff's factual averments contained in

5

the complaint as true, and drawing every reasonable inference helpful to the plaintiff's cause, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988). The court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (motion to dismiss under Fed. R. Civ. P. 12(b)(6)).[2]

B.   Federal Claims: Americans with Disabilities Act and the Rehabilitation Act

The plaintiff alleges that Riverbend harassed, mistreated, discriminated against, and terminated the plaintiff because the plaintiff actually suffers from ADD and because Riverbend perceived the plaintiff to suffer from a manic-depressive or bipolar disorder. Riverbend moves for judgment on the pleadings on the Americans with Disabilities claim and the Rehabilitation Act claim on the ground that the plaintiff has failed to allege

---

[2]The defendants also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). "In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." Curtis v. Airborne Freight Corp., No. 98 Civ. 4062, 1998 WL 883297 at *2 (S.D.N.Y. Dec. 17, 1998)

6

that he suffers from a disability as defined by 42 U.S.C.A. § 12102(2). Specifically, Riverbend contends that the plaintiff has failed to allege that he has an impairment, or is perceived as having an impairment, that substantially limits a major life activity. The plaintiff contends that he is disabled under the Americans with Disabilities Act and the Rehabilitation Act both on account of an actual impairment that substantially limits a major life activity, and on account of a perception of such an impairment. The court addresses each basis for finding a disability separately.

I.  Perceived Disability

Under the Americans With Disabilities Act "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C.A. § 12102(2) (West 1995); see also, 29 C.F.R. § 1630.2(g) (1998).[3]  At issue in this section is whether the

_____

[3]The parties do not dispute that the definition of the requisite disabilities under the Americans with Disabilities Act and the Rehabilitation Act are the same for present purposes. See 29 C.F.R. § 1614.203 (1998) (providing elements under Rehabilitation Act).

7

plaintiff has sufficiently alleged a disability pursuant to part (C), premised upon the defendant's perception of an impairment that substantially limits a major life activity.

A mental impairment includes "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2)(1998). Under proper circumstances, bipolar and manic-depressive disorders and ADD have been found to qualify as impairments. See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081 (10th Cir. 1997) (bipolar disorder mental disability); Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1284 (7th Cir. 1996) (bipolar disorder mental disability); Miller v. Nat'l Cas. Co., 61 F.3d 627 (8th Cir. 1995) (manic-depressive impairment). The appendix to 29 C.F.R. § 1630.2(j)(2) (1998), identifying certain factors useful in evaluating the substantiality of an impairment, provides that impairments which significantly restrict a major life activity as compared to the average person are substantially limiting. Under 42 U.S.C.A. § 12102(2) subsection (C) "[a] person is regarded as having such an impairment if others treat [him] as if [he] is disabled." Cody v. Cigna Healthcare, 139 F.3d 595, 598 (8th Cir. 1998); see also, C.F.R. § 1630.2(l) (1998).

The plaintiff argues that the major life activities at issue

8

in this case are working, learning, and societal interaction. See 29 C.F.R. § 1630.2(i) (1998). Although learning is a major life activity, and the court assumes societal interaction is a major life activity for the purposes of this order, there are no allegations in the complaint regarding these activities, nor are there allegations from which interference with these activities can be inferred. Therefore, to be successful, the plaintiff's claim must depend on a substantial impairment, or the perception of a substantial impairment, in the major life activity of working. See id. (working a major life activity).

The plaintiff has alleged that Riverbend and its employee Boisvert perceived him as suffering from a manic-depressive or bipolar disorder and knew of his ADD, and that he was harassed and ultimately terminated as a result of this knowledge and perception. Specifically, he has either expressly alleged, or such allegations are reasonably inferred from his complaint, that Boisvert, upon learning of the plaintiff's ADD and perceiving a manic-depressive or bipolar disorder, inter alia: (1) stated "[the plaintiff] has demonstrated a pattern of emotional reaction in situation [sic] that creates significant obstacles," Compl. at 8; (2) stated the plaintiff was "impulsive," id.; (3) prohibited him from participating in aspects of his employment as a result of such held perceptions and knowledge, id.; (4)

9

rejected the plaintiff's work and decisions as the product of the plaintiff's perceived and known disabilities, id.; and (5) ultimately terminated the plaintiff because of such perceptions.

Given reasonable inferences, the plaintiff alleges that Riverbend's employees perceived him as suffering from manic-depressive or bipolar disorder, knew of his ADD, and consequently treated or regarded him as significantly restricted compared to an average person, and therefore substantially limited, in his capacity to work. Because the defendant moved for dismissal on counts one and two on the same ground, the motion is denied as to both counts as regards the defendant's perception of the plaintiff's impairment.

## II. Actual Impairment

To establish a disability in fact under the Americans with Disabilities Act, the plaintiff must show that he has a physical or mental impairment that substantially limits a major life activity. See 42 U.S.C.A. § 12102(2)(A); Lowry v. Cabletron Sys. Inc., 973 F.Supp. 77, 80 (D.N.H. 1997). As discussed above, courts have found bipolar and manic-depressive disorders and ADD to qualify as impairments. Again, working is a major life activity and is the life activity at issue in this case. See 29 C.F.R. § 1630.2(i) (1998).

10

Pursuant to the regulations implementing the Americans with Disabilities Act, a person is substantially limited in the major life activity of working if he is:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3) (1998). More generally, the regulations provide that in evaluating whether an impairment is substantially limiting, courts should consider:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (1998).

The plaintiff has failed to allege that he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in comparison to the average person similarly trained, nor has he alleged facts from which one could infer such a restriction. Indeed, the only allegations in his complaint relating to his work abilities are associated with his employment at Riverbend and support a contrary inference, that the plaintiff is not significantly impaired as he purportedly performed well in

11

the positions he held at Riverbend.  The one exception is the plaintiff's medical leave which he took near the end of his employment, although this alone, in the context of this case, cannot support a reasonable inference that the plaintiff was substantially impaired in his ability to work.  This is so because, among other things, the complaint and reasonable inferences drawn therefrom lead to a conclusion that the medical leave was the result of allegedly intentional and improper conduct on the part of Boisvert to discriminate against and antagonize the plaintiff.  There is no direct relation alleged nor reasonably inferred between the plaintiff's need for the medical leave, his impairment, and the duties and requirements of his employment.

Nor do the factors identified in 29 C.F.R. § 1630.2(j)(2) support an inference of substantial impairment.  Beyond identifying his affliction as ADD, the plaintiff does not allege facts regarding the nature or severity of his impairment.  Nor has the defendant alleged facts from which one could discern the permanent or long term impact on the plaintiff resulting from the plaintiff's impairment.  On the other hand, given the nature of ADD in general, it is reasonably inferred that the impairment has been life-long and will continue to afflict the defendant.  See Criado v. IBM Corp., 145 F.3d 437, 442 (1st Cir. 1998).

12

The court concludes that the plaintiff has failed to allege sufficient facts regarding the severity of his impairment, its impact on him, and his resultant ability to perform either a class of jobs or a broad range of jobs in various classes to withstand the defendant's motion. The court therefore holds that the plaintiff has failed to state a cause of action that he actually has a physical or mental impairment that substantially limits him in the major life activity of working. The court dismisses this as a basis for liability in counts one and two.

The plaintiff misses the point when he argues that his ability to compensate for his impairment at Riverbend does not mean he was not substantially impaired. The relevant question at this point is not whether the facts support an inference that he could function in his employment at Riverbend, but instead, it is the broader question of whether the plaintiff has alleged facts from which one could reasonably infer he was substantially impaired in the major life activity of working. While not conclusive of the issue, his allegations about his work at Riverbend, when combined with the dearth of other allegations regarding his ability to perform in a class of jobs or a broad range of jobs, fail to state a claim. Similarly, the mere allegation of the existence of an impairment such as ADD is insufficient to state a claim as it does not reach the issue of

13

whether the impairment substantially impairs the plaintiff's ability to work.

C.    State Law Claims

As a preliminary issue, the defendants assert that the plaintiff's state law claims asserting intentional interference with contractual relations, breach of contract, wrongful discharge, and defamation should be dismissed as the court lacks jurisdiction over the claims.  The defendants assert that there is no common nucleus of operative facts, or, in the alternative, if the court concludes there is a common nucleus of operative facts, the court in its discretion should decline to exercise jurisdiction.

In United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), the United States Supreme Court delineated the extent of a federal court's supplemental jurisdiction.

> [A] federal claim must have substance sufficient to
> confer subject matter jurisdiction on the court. . . .
> The state and federal claims must derive from a common
> nucleus of operative fact.  But if, considered without
> regard to their federal or state character, a
> plaintiff's claims are such that he would ordinarily be
> expected to try them all in one judicial proceeding,
> then, assuming substantiality of the federal issues,
> there is power in federal courts to hear the whole.

Gibbs, 383 U.S. at 726 (citations omitted) (speaking in context

14

of pendent jurisdiction).[4]  Even where supplemental jurisdiction does lie, such jurisdiction is discretionary.  It

> need not be exercised in every case in which it is found to exist.  It has consistently been recognized that [such] jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.

Gibbs, 383 U.S. at 726.

Section 1367 states that a court may decline to exercise its jurisdiction where:  (1) a novel or complex issue of state law has been raised; (2) the state claims substantially predominate over the federal claims; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) there are exceptional circumstances presenting compelling reasons for declining jurisdiction.  Seeking to apply the "common nucleus of operative facts" standard and advance the policy of efficiency behind supplemental jurisdiction, courts inquire into both the relevant facts and the evidentiary overlap likely to occur in trying the federal and state claims.  Lyon v. Whisman, 45 F.3d

---

[4]28 U.S.C.A. § 1367 (West 1998), providing that a district court with original jurisdiction over any civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," essentially codified Gibbs.  See Rodriquez v. Doral Mortgage Corp., 57 F.3d 1168, 1175 (1st Cir. 1995).

15

758, 762 (3d Cir. 1995).

In this case the plaintiff alleges violations of the Americans with Disabilities Act and the Rehabilitation Act over which the court has original jurisdiction. The plaintiff's claims all arise out of his employment relationship with Riverbend and Boisvert. Although this alone may well be an inadequate basis for exercising supplemental jurisdiction, see Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 747-748 (E.D. Va. 1991), in the circumstances of this case, facts and evidence relevant to the federal claims will likely overlap considerably with facts and evidence pertinent to the contested state law claims.

The existence and nature of an employer/employee relationship between Riverbend and the plaintiff is relevant to his federal claims and, inter alia, his state law contract and wrongful discharge claims. The nature of Boisverts' actions during the plaintiff's employment, including, among other things, statements made, inferences intended, and circumstances surrounding the ultimate decision to terminate, will raise common factual questions bearing on the federal discrimination claim and the state claims of intentional interference with contractual relations, defamation, and wrongful discharge.

Although issues are factually bound in each case, other

16

courts in this circuit presented with analogous circumstances have reached similar conclusions.  See August v. Offices Unlimited, Inc., 981 F.2d 576, 578 n.1 (1st Cir. 1992) (jurisdiction over state claims conferred by 28 U.S.C.A. § 1376(a) where claims included, inter alia, state and federal claims of unlawful discrimination and state claims of intentional infliction of emotional distress, breach of employment contract, and wrongful discharge); Godfrey v. Perkin-Elmer, 794 F. Supp. 1179, 1183-85 (D.N.H. 1992) (jurisdiction appropriate in Title VII case over state law claims alleging slander, wrongful discharge, and intentional infliction of emotional distress).[5]  Therefore, the court concludes that power to exercise supplemental jurisdiction exists.

The court also rejects the defendants' argument that the court should decline to exercise its supplemental jurisdiction. The defendants do not assert, nor does the court find, the issues of state law presented by this case to be new or novel.[6]  See

_____

[5]The court does not find the cases cited by the defendants compelling due to the varying factual circumstances and legal conclusions of the other courts.  See, e.g., Mason v. Richmond Motor Co., Inc., 625 F. Supp. 883 (E.D. Virginia 1986).

[6]The plaintiff does raise a legal issue not previously addressed by the New Hampshire Supreme Court in his claim of defamation, addressed infra in § C(IV).  However, given the thorough treatment of the issue by other state courts, indications provided by the New Hampshire Supreme Court as to conclusion it would come to if presented with the issue, the fact

17

Godfrey, 794 F. Supp. at 1185 (issues of wrongful discharge, intentional and negligent infliction of emotional distress, defamation, not new or novel).  The plaintiff's state claims do not predominate, nor has the court dismissed the federal claims. See 28 U.S.C.A. § 1367.  Indeed, in light of the common factual and evidentiary issues between the claims, "given the duplication and waste of judicial resources that separate trials would entail, plaintiff would be expected to try them all in a single proceeding."  Godfrey, 794 F. Supp. at 1184.

Nor does the court agree that dismissal is appropriate because of the threat of jury confusion.  All other factors discussed above indicate that jurisdiction should be asserted. Moreover, the court must presume the jury capable of following instructions and sorting through evidence.  See United States v. Lomeli, 76 F.3d 146, 149 (7th Cir. 1996).  Therefore, the defendants' motion to dismiss the state law claims on the basis of the court's alleged lack of jurisdiction is denied.

I.    Count Three, New Hampshire Law Against Discrimination

The plaintiff asserts a claim pursuant to the New Hampshire

---

that the court will exercise jurisdiction over the other state claims asserted, and the discretion provided for by 28 U.S.C.A. § 1367(c), the court will exercise its jurisdiction over the defamation claim as well.

18

Law Against Discrimination, New Hampshire Revised Statues Annotated Chapter ("RSA") § 354-A:1-26 (1995).  The defendants contend that no private cause of action exists under the statute.

In Tsetseranos v. Tech Prototype, Inc., 893 F. Supp. 109, 119-20 (D.N.H. 1995), the court concluded that there was no private cause of action under the statute.  In its analysis, the court found that the administrative process the statute provides, which requires that a complainant first exhaust his administrative remedies before seeking judicial review, and judicial review must be sought in the state courts, compelled the conclusion that there was no private cause of action under the statute.  Id. at 120.[7]  Other courts have since followed this conclusion.  See Carparts Distribution Center, Inc., v. Automotive Wholesaler's Ass'n, Inc., 987 F. Supp. 77, 83 (D.N.H. 1997); Evans v. Work Opportunities Unlimited, Inc., 927 F. Supp. 554, 556 (D.N.H. 1996).  This court finds the reasoning of Tseteranos convincing and grants the defendants' motion as to count three.

II.  Intentional Infliction of Emotional Distress
_____

[7]The statute also specifically provides that upon bringing "an action in federal court arising out of the same claims of discrimination which formed the basis of an order or decision of the commission," said order or decision is to be vacated.  RSA § 354-A:22, V (1995).

In count four, the plaintiff asserts a claim against the defendants for the intentional infliction of emotional distress. The defendants have moved for judgment on three grounds: (1) the plaintiff has not alleged that the defendants' conduct was extreme and outrageous; (2) the plaintiff has not alleged severe emotional distress; and (3) as to defendant Riverbend, the plaintiff's claim runs afoul of the workers' compensation bar.

New Hampshire recognizes the tort of intentional infliction of emotional distress:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Morancy v. Morancy, 134 N.H. 493, 496 (1991) (quoting Restatement (Second) of Torts § 46 (1965)). Liability can be imposed upon the defendants:

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. d. The court, not the jury, is initially responsible for determining whether the defendants' conduct is sufficiently "extreme and outrageous as to permit recovery." Id. at cmt. h.

20

As to the first ground for the defendants' motion on this count, the severity of the plaintiff's distress, the court concludes that judgment on the pleadings would be inappropriate. The plaintiff has alleged that he has suffered "great" emotional distress. The fact that he has not alleged "severe emotional distress" explicitly is not dispositive. Moreover, although he has alleged few specific facts indicating the severity of his distress, the plaintiff has asserted that his doctor directed him to take a medical leave of absence from his employment to maintain his health and recuperate. Given the doctor's directive, one may reasonably infer that the plaintiff's emotional distress was sufficiently extreme to support his claim for intentional infliction of emotional distress at this stage of the proceeding.

The defendants next assert that the conduct alleged was not sufficiently egregious to support the plaintiffs' claim. For defendant Boisvert, the court concludes that ambiguity in the record surrounding the exact nature of his conduct, when viewed in light of the court's duty to provide all reasonable inferences in favor of the plaintiff, precludes a conclusion at this time that the conduct was not extreme or outrageous.

The analysis for Riverbend is complicated by the New Hampshire Workers Compensation Law. Riverbend argues that the

plaintiff's common law tort claim is barred by the New Hampshire Workers' Compensation Law, see RSA § 281-A:8 (Supp. 1997), and the plaintiff concedes that its emotional distress claim against Riverbend is barred as long as there was an employment relationship between himself and Riverbend.[8] However, the plaintiff argues that the date of his termination is a question for the jury in this case, and that Riverbend's conduct after the plaintiff's termination provides an independent and sufficient ground for a claim of intentional infliction of emotional distress. The conduct forming the predicate of the plaintiff's claim vis-a-vis Riverbend is therefore more limited than against Boisvert.

The record indicates that on June 14, 1996, Boisvert gave

---

[8]RSA § 281-A:8 provides:

An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions hereof and on behalf of himself, or his personal or legal representatives, to have waived all rights of action whether at common law or by statute or otherwise:

> I.  Against the employer or the employer's insurance carrier; and

> II. Except for intentional torts, against any officer, director, agent, servant or employee acting on behalf of the employer or the employer's insurance carrier.

RSA § 281:12 (1987), amended by RSA § 281-A:8 (Supp. 1994).

the plaintiff an ultimatum that he resign or be fired. The plaintiff then left for a two week medical leave during which Boisvert repeatedly phoned him, demanding his return to Riverbend. On July 5, 1996, the lock on the plaintiff's office was changed. A termination letter was issued on July 11, 1996.[9] On July 12, 1996, a letter was circulated by Riverbend to its employees prohibiting the plaintiff's access to the premises.

Although the plaintiff argues that one could infer the plaintiff was terminated as of June 14, 1996, the record does not reasonably support such an inference. The plaintiff himself described his absence from Riverbend as a medical leave. He further asserts that he had accumulated two weeks leave and had arranged for contingencies. Indeed, it is in part the repeated demands that he return to work, at least for questioning, on which he bases his claim of intentional infliction of emotional distress. Moreover, at one point in his complaint, the plaintiff himself alleges that he was terminated on July 13, 1996, by a letter dated July 11, 1996. See Compl. at 4. Given the inconsistencies of the plaintiff's allegations and arguments and reading the allegations in the light most favorable to the

---

[9]The plaintiff first alleges he was terminated on July 13, 1996, by a letter dated July 11, 1996, see Compl. at 4, and later alleges that a termination letter issued July 11, 1996, see Compl. at 12.

23

plaintiff, the court finds it is reasonable to infer that the plaintiff was effectively terminated on July 5, 1996, when the lock on the plaintiff's office was changed. The court therefore reviews conduct occurring subsequent to July 5, 1996, as the basis for the plaintiff's claim against Riverbend.

To state a claim for intentional infliction of emotional distress, the predicate conduct must be so outrageous and extreme as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 cmt. d. The plaintiff has premised his claim of intentional infliction of emotional distress in part upon the employer/supervisor and employee relations between the parties, and upon the repeated and continuous nature of the defendants' actions. However, these factors supporting the plaintiff's claim as to Boisvert are undermined as to Riverbend by the plaintiff's subsequent assertion that liability should be premised upon limited acts in a narrow frame of time after the termination of the employment relationship.

Allegations in this complaint that Riverbend failed to pay the plaintiff or use its own procedural requirements, or that it circulated a letter prohibiting the plaintiff's access to the grounds after he was terminated, do not rise to the level of

24

intolerable conduct necessary for the claim. Nor, on this record, are there allegations of accusations or intimations occurring after July 5, 1996, that support such as claim. Therefore, the plaintiff's claim asserting intentional infliction of emotional distress against Riverbend is dismissed. Nor does a claim of vicarious liability stand. See Censullo, 989 F.2d at 43-4 (1st Cir. 1993).

III. Intentional Interference With Contractual Relations

Defendant Boisvert has also moved for judgment on the plaintiff's claim that he intentionally interfered with contractual relations. Under New Hampshire law, the elements of a claim of intentional interference with contractual relations are:

> (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference.

Jay Edwards, Inc. v. Baker, 130 N.H. 41, 46 (1987) (quoting Emery v. Merrimack Valley Wood Products, 701 F.2d 985, 988 (1st Cir. 1983) (emphasis in original)).

Defendant Boisvert contends that as the plaintiff's supervisor he cannot be liable for intentional interference with the plaintiff's contractual relations with Riverbend because he

25

was acting as Riverbend's agent, thereby eliminating the third party necessary to state a claim.  Boisvert argues that "a supervisor is privileged to interfere in a subordinate's employment relationship."  Defs.' Mem. of Law in Support of Mot. to Dismiss and/or Judgment on the Pleadings at 17.  The plaintiff counters that Boisvert's actions, if motivated by malice and bad faith, do not fall within the scope of his employment at Riverbend, and that therefore Boisvert was not acting as Riverbend's agent when he engaged in such conduct.

In Soltani v. Smith, 812 F. Supp. 1280, 1296 (D.N.H. 1993), this court concluded that where an individual's decision "'was motivated by actual malice', where 'actual malice' is defined as 'bad faith, personal ill-will, spite, hostility, or a deliberate intent to harm the plaintiff,'" the individual was not acting within the scope of his employment.  Soltani, 812 F. Supp. at 1296 (quoting Piekarski v. Home Owners Sav. Bank, 956 F.2d 1484, 1495 (8th Cir. 1992)).  The court in Soltani determined that such an approach was consistent with New Hampshire's common law regarding agency, citing Daigle v. City of Portsmouth, 129 N.H. 561, 580 (1980).  In Daigle, the New Hampshire Supreme Court concluded that an individual's actions could not be in the scope of employment unless it was performed in furtherance of the

26

employer's business.  See 129 N.H. at 580.[10]  The court in Soltani was in turn followed by Birkmaier v. Rockingham Venture, Inc., CV-94-429-SD  (D.N.H. 1995).  See also, 8 Stuart M. Speiser, et al., The American Law of Torts § 31:41 at 1260 (1991).

The court concurs with the reasoning of the Soltani court and the Eighth Circuit in Piekarski.  A reasonable person could infer from the plaintiff's allegations that the ultimate decision to terminate the plaintiff was the culmination of a pattern of conduct undertaken with actual malice, as defined in Soltani, to harass and discriminate against the plaintiff.  Such conduct would fall outside Boisvert's agency relationship with Riverbend, making Riverbend the third party the plaintiff had contractual relations with.  The court therefore denies the defendant's motion on this claim.

The defendant's reliance on Alexander v. Fujitsu Bus. Communication Sys., 818 F. Supp. 462, 468-70 (D.N.H. 1993) is unavailing.  In Alexander the court was not presented with allegations that a supervisor acted with malice, bad faith,

_____

[10]The First Circuit has similarly interpreted New Hampshire law to provide that an act is within the scope of employment "if it was authorized by the employer or incidental to authorized duties; if it was done within the time and space limits of employment; and if it was actuated at least in part by a purpose to serve an objective of the employer."  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

personal ill-will, spite or hostility.  The court therefore did not consider the issue of whether actions so motivated were removed from the scope of the agency relationship.[11]

IV.  Defamation

In count eight the plaintiff asserts that Riverbend and Boisvert disseminated and published defamatory information to third parties regarding the plaintiff, his ability to work, and his honesty.  The defendants seek dismissal because, as a matter of law, one agent of a corporation cannot be considered to have published a statement to a third party, as necessary for a defamation cause of action, where the statement was made to another agent of the same corporation.[12]

The New Hampshire Supreme Court has not specifically addressed the issue whether an agent of a corporation can be liable for defamation where that agent made allegedly defamatory statements solely to other agents of the same corporation as in the circumstances of this case.  The Restatement (Second) of

---

[11]Although the plaintiff pleads in one part of his complaint that Boisvert was acting as the agent of Riverbend, Federal Rule of Civil Procedure 8(e) provides for pleading in the alternative.

[12]Although the defendant's argument is vague, the court does not understand the defendant to present an argument of privilege. In any event privilege is subject to abuse, see Bals v. Verduzco, 600 N.E.2d 1353, 1356 (Ind. 1992), and on this record judgment on the issue at this time would be inappropriate.

28

_Torts_, § 577 Comment (i) (1977), provides that "[t]he communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation."

New Hampshire has repeatedly followed § 577 of the Restatement. <u>See</u> <u>Keeton v. Hustler Magazine, Inc.</u>, 131 N.H. 6, 7 (1988) (following Restatement § 577A); <u>Duchesnaye v. Munro Enterprises, Inc.</u>, 125 N.H. 244, 253 (1984) (following Restatement § 577 cmts. (b) and (c)); <u>Thomson v. Cash</u>, 119 N.H. 371, 375 (1979) (following § 577 cmt. (c)). Although there is a division on this issue, a substantial number of states that follow the Restatement's version of defamation law have concluded that the publication requirement is met where defamatory statements are made between agents of a corporation. <u>See</u> <u>Pirre v. Printing Devs., Inc.</u>, 468 F. Supp. 1028 (S.D.N.Y. 1979); <u>Bals v. Verduzco</u>, 600 N.E.2d 1353 (Ind. 1992) ; <u>Heselton v. Wilder</u>, 496 A.2d 1063, 1067 (Me. 1985); <u>Luttrell v. United Tel. System, Inc.</u>, 683 P.2d 1292 (Kan. 1984); <u>Bander v. Metropolitan Life Ins. Co.</u>, 47 N.E.2d 595 (Ma. 1943). As the Maine Supreme Court stated "[t]hose jurisdictions have concluded that there is no good reason to protect a corporation as opposed to a partnership or

29

individual enterprise." Staples v. Bangor Hydro-Electric Co., 629 A.2d 601, 603 (Me. 1993). Leading commentators have attributed the division among states regarding whether intra-corporate communications constitute publication "to a confusion between publication and privilege." Prosser and Keeton on the Law of Torts § 113, 798 n. 15 (5th ed. 1984). Indeed, the older rule providing absolute immunity for intra-corporate communications is increasingly falling into disfavor as courts are concluding that the issue is one of privilege. See Richard Larson, 5 Hofstra Labor Law Journal 41, 50-51 (1987). This court predicts that were the New Hampshire Supreme Court presented with the issue, the court would hold that intra-corporate communications meet the requirement of publication but are subject to qualified privilege. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The court therefore denies the defendants' motion as to the plaintiff's defamation claim.

Conclusion

In accordance with the preceding discussion, the court grants the defendants' motion to dismiss the plaintiff's claims: (1) under the Americans with Disabilities Act and the federal Rehabilitation Act in so far as the claims are premised upon an actual impairment substantially limiting a major a life activity,

30

<u>see</u> 42 U.S.C.A. § 12102(2)(A); (2) under the New Hampshire Anti-Discrimination Act; and (3) against Riverbend alleging intentional infliction of emotional distress.  The court denies the motion in all other regards (document no. 6).

        SO ORDERED.


                                       _____
                                       Joseph A. DiClerico, Jr.
                                       District Judge

January 26, 1999

cc:  Tony F. Soltani, Esquire
     James L. Kruse, Esquire